AMAX, INC. *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES
(6374)

DUPONT, C. J., BORDEN and FOTI, Js.

Argued September 14—decision released November 8, 1988

*Jane D. Comerford,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Kenneth E. Werner,* with whom was *Thomas R. Webb,* and, on the brief, *Scott P. Moser* and *Charles H. Lenore,* for the appellee (plaintiff).

DUPONT, C. J. The plaintiff, AMAX, Inc., is a multistate corporation with its principal place of business in Connecticut. The issue in this case is whether the plaintiff owed an additional Connecticut corporation business tax arising out of capital gain and dividend income received by it in 1975, as assessed by the defendant, the commissioner of revenue services. The resolution of this issue necessitates an interpretation of General Statutes (Rev. to 1975) § 12-218.

The commissioner assessed a tax of $1,604,746, plus interest at the statutory rate, against the plaintiff.[1] This assessment was based on the defendant's treatment of the plaintiff's income as allocated to Connecticut, resulting in its being subject in its entirety to the Connecticut corporation business tax pursuant to General Statutes (Rev. to 1975) § 12-218 (1).[2] The plaintiff, pursuant to General Statutes § 12-237, appealed to the Superior Court from the defendant's determination, asserting that it was entitled to apportionment of the dividend and capital gain income under the provisions of General Statutes (Rev. to 1975) § 12-218 (2).[3]

The trial court rendered judgment for the plaintiff, and ordered that the defendant's assessment of additional tax be set aside and the case remanded to the defendant for an apportionment of the capital gain and dividend income received by the plaintiff pursuant to General Statutes (Rev. to 1975) § 12-218 (3) (a), (b) or (c). We find no error.

The stipulated facts are as follows. The plaintiff, a New York corporation, has been engaged for many years

---

[1] In addition to being taxed in Connecticut, all or part of the disputed income was also subject to taxation by California, Colorado, New York and Wisconsin and gave rise to an additional aggregate tax liability in those states of approximately $150,000.

[2] General Statutes (Rev. to 1975) § 12-218 (1) provided in pertinent part: "Interest, taxable dividends and net gains or losses either from sales or book write-offs of intangible assets, less related expenses, of a company having its principal place of business within the state shall be allocated to the state . . . ."

[3] General Statutes (Rev. to 1975) § 12-218 (2) provided in pertinent part: "[Income] derived from tangible or intangible property, the acquisition, management and disposition of which constitute *integral parts* of the taxpayer's regular trade or business operations, shall not be allocated . . . but shall be apportioned . . . ." (Emphasis added.) Section 12-218 was subsequently amended in 1981 to delete the allocation formula and to provide for a straight apportionment formula only. Public Acts 1981, No. 81-411, § 2.

The plaintiff does not claim on appeal that the disputed income was to be allocated entirely outside of Connecticut.

in the mining, refining and sale of metals, including copper, throughout the world. In 1975, the plaintiff owned an interest in two mining companies in South Africa, O'okiep Copper Company Limited (O'okiep) and Tsumeb Corporation Limited (Tsumeb). O'okiep was formed in 1937 and has been continuously engaged in copper mining in South Africa since that time. Tsumeb was formed in 1947 and, since that time, has been continuously engaged in copper mining in southwest Africa.

In December, 1975, the plaintiff transferred its interests in O'okiep and Tsumeb to a Bermuda corporation in exchange for 100 percent of its stock. For federal income tax purposes, that transfer was a taxable transaction and the plaintiff reported capital gains of $10,261,039 and dividends of $5,769,964 attributable to the transfer on its 1975 federal income tax return.

The parties disagree on two issues. The first issue includes a number of related claims. The plaintiff argues that § 12-218 of the General Statutes (Rev. to 1975) is ambiguous, that it concerns the imposition of a tax, that the defendant's interpretation of the statute is not entitled to any deference, and that the plaintiff was entitled to a de novo review upon its appeal to the trial court. Conversely, the defendant argues that the statute is not ambiguous, that it concerns an exemption from the Connecticut corporation business tax, that the defendant's interpretation of § 12-218 is entitled to special deference, and that the plaintiff was not entitled to a de novo review. Second, the plaintiff claims that the income received from the 1975 sale of its stock in O'okiep and Tsumeb was "integral" to its business and thus apportionable pursuant to § 12-218 (2).[4] The

---

[4] The plaintiff also claims that the defendant's assessment of a tax on its income by allocation imposes a discriminatory burden on interstate commerce in violation of the commerce clause. U.S. Const., art. I, § 8, cl. 3. Because we agree with the trial court that the commissioner's assessment of a tax on the plaintiff's income by allocation was improper, we need not

defendant would allocate the entire gain to Connecticut, claiming that § 12-218 (1) applies.

## I

The defendant first claims that the trial court erred in concluding that § 12-218 was ambiguous and therefore to be construed in favor of the plaintiff and against the taxing authority. We disagree. The law in this state is clear that, if a taxing statute is ambiguous, the taxpayer is entitled to a construction in its favor. *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987). We conclude that § 12-218 was ambiguous, given the legislative history that accompanied the statute's amendment in 1981 from an allocation or apportionment formula to a straight apportionment formula.[5] Moreover, the meaning of "integral parts," the statutory language at issue in this case, is not readily discernible from the face of the statute. The statute is sufficiently ambiguous, thereby entitling the plaintiff to a construction of § 12-218 in its favor.

The defendant also argues that the trial court erred in concluding that § 12-218 concerns the imposition of a tax and, therefore, must be strictly construed against the taxing authority and in favor of the taxpayer. In *B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985), however, the court concluded that § 12-218 concerned the imposition of a tax. The statute must, therefore, be strictly construed in favor of the taxpayer and against the taxing authority. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn.

address this issue. It is noteworthy, however, that "[a]t least in the interstate commerce context . . . the antidiscrimination principle has not in practice required much in addition to the requirement of fair apportionment." *Container Corporation of America* v. *Franchise Tax Board,* 463 U.S. 159, 171, 103 S. Ct. 2933, 77 L. Ed. 2d 545, reh. denied, 464 U.S. 909, 104 S. Ct. 265, 78 L. Ed. 2d 248 (1983).

[5] Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 6, 1981 Sess. pp. 1750, 1759-60.

583, 588, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* supra, 420–23.

The defendant further argues that the trial court erred in concluding that no deference should be given to his interpretation of § 12-218. "[T]he construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." *Schlumberger Technology Corporation* v. *Dubno,* supra, 423. Furthermore, the appellate review accorded to a taxpayer after an adverse ruling by the commissioner of revenue services is a plenary one; *Texaco Refining & Marketing Co.* v. *Commissioner,* supra, 583; and the taxpayer is entitled to a trial de novo. *Schlumberger Technology Corporation* v. *Dubno,* supra, 421. The trial court was, therefore, correct as to the first set of claims raised.

## II

The defendant next claims that the trial court erred in concluding that the acquisition, management and disposition of the stock of the plaintiff's subsidiaries (O'okiep and Tsumeb) constituted income that was an "integral [part] of [the plaintiff's] regular trade or business operations," thereby compelling the application of § 12-218 (2). The defendant relies on § 12-218 (1), arguing that since the plaintiff has its principal place of business in Connecticut, the entire income must be allocated to this state. In effect, the defendant reads § 12-218 (2) as an exception to § 12-218 (1), claiming that the income was not "integral" to the plaintiff's business and, therefore, that § 12-218 (2) does not apply. Section 12-218 (2) states that income accrued by an integral business shall be apportioned and not allocated. We agree with the trial court that the income was integral to the plaintiff's business and thus was apportionable under § 12-218 (2).

The crucial question in this case is the meaning of the term "integral." Since there is no Connecticut authority that directly addresses the question of what constitutes an "integral" part of a business,[6] we, like the trial court, use United States Supreme Court cases for guidance. Although these leading cases relied on by the trial court to determine whether the plaintiff and its subsidiaries constitute an integral business do not address the standard to be used to interpret the meaning of "integral parts" income, they are relevant to the interpretation of General Statutes (Rev. to 1975) § 12-218 (2). See *Container Corporation of America* v. *Franchise Tax Board,* 463 U.S. 159, 103 S. Ct. 2933, 77 L. Ed. 2d 545, reh. denied, 464 U.S. 909, 104 S. Ct. 265, 78 L. Ed. 2d 248 (1983); *F. W. Woolworth Co.* v. *Taxation & Revenue Department,* 458 U.S. 354, 102 S. Ct. 3128, 73 L. Ed. 2d 819, reh. denied, 459 U.S. 961, 103 S. Ct. 274, 74 L. Ed. 2d 213 (1982); *ASARCO, Inc.* v. *Idaho State Tax Commission,* 458 U.S. 307, 102 S. Ct. 3103, 73 L. Ed. 2d 787 (1982); *Exxon Corporation* v. *Wisconsin Department of Revenue,* 447 U.S. 207, 100 S. Ct. 2109, 65 L. Ed. 2d 66 (1980); *Mobil Oil Corporation* v. *Commissioner of Taxes,* 445 U.S. 425, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980). All of these cases concern the constitutionality of state apportionment statutes under the due process and commerce clauses of the United States constitution. U.S. Const., amend. XIV, § 1 and art. I, § 8, cl. 3. The constitutional nexus

---

[6] Cf. *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987) (concerned the proper characterization of income attributable to plaintiff's wireline services as apportionable income derived from "the manufacture, sale or use of tangible personal or real property' " under General Statutes (Rev. to 1975) § 12-218 [3] [a] and [b]); *B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 5, 490 A.2d 991 (1985) (concerned characterization of income under General Statutes § 12-218 [2] providing that "net gains or losses from sales, scrappage, abandonment, book write-offs or rentals of tangible assets . . . shall be allocated to the state"). Neither case concerned the statutory interpretation of "integral" involved in this case.

explicated by the Supreme Court in these cases is the unitary business principle.[7]

This principle provides that apportionment is constitutionally permissible only if the income being taxed was earned in the course of activities that are part of a unitary business conducted by the corporate taxpayer within the taxing state. See *Mobil Oil Corporation* v. *Commissioner of Taxes,* supra, 439. In order to determine whether it is constitutionally permissible for a state to tax corporate income, the unitary business principle requires a review of certain factors. These factors are "functional integration, centralization of management, and [other] economies of scale." Id., 438. Since these "factors of profitability" are derived from the operation of the business in its entirety, it would be deceptive to characterize such income as having a particular origin. Id.

The unitary business principle is similar to the concept of "integral parts" income under § 12-218 (2). Since the statute does not define the term "integral" we accord the term its commonly understood meaning. *B. F. Goodrich Co.* v. *Dubno,* supra, 5. The word "integral" is commonly understood to mean "entire," and the term "unitary" generally means "whole." American Heritage Dictionary (2d Ed. 1985). Furthermore, the United States Supreme Court cases that delineate the unitary business principle concern state apportionment statutes that likewise employ the

---

[7] Other state courts have used the United States Supreme Court's explication of the unitary business principle in interpreting their state apportionment statutes. See, e.g., *Krafico Corporation* v. *Charnes,* 636 P.2d 1300 (Colo. App. 1981); *In re Occidental Petroleum,* slip op. (Cal. State Bd. of Equalization, June 21, 1983); see also *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 417 n.5, 521 A.2d 569 (1987). "Overall, Connecticut's statutes for the apportionment of the income of multistate corporations resemble in broad outline the statutory pattern of corporate income taxes in other states, including those that have adopted the Uniform Division of Income for Tax Purposes Act." Id.

statutory language at issue in this case. See, e.g., *F. W. Woolworth Co.* v. *Taxation & Revenue Department,* supra, 357 n.2; *ASARCO, Inc.* v. *Idaho State Tax Commission,* supra, 310.

The Supreme Court's "unitary cases," as previously noted, describe the significant factors that support a conclusion that a corporation is part of a unitary business. In addition, the trial court must find that these factors demonstrate the actual exertion of control by a corporation over its subsidiaries, as opposed to potential control. *F. W. Woolworth Co.* v. *Taxation & Revenue Department,* supra, 362–63. The first factor, functional integration, is present here. The trial court found, and we agree, that the plaintiff was functionally integrated with its subsidiaries, O'okiep and Tsumeb. This finding is amply supported by the record. The parties stipulated that O'okiep and Tsumeb were engaged in the business of mining copper. The trial court also found that the plaintiff and its predecessors have been engaged for many years in the business of mining, refining and selling a variety of metals, including copper, throughout the world. "When a corporation invests in a subsidiary that engages in the same line of work as itself, it becomes much more likely that one function of the investment is to make better use—either through economies of scale or through operational integration or sharing of expertise—of the parent's existing business-related resources." *Container Corporation of America* v. *Franchise Tax Board,* supra, 178. Moreover, two of the plaintiff's wholly-owned subsidiaries had exclusive rights as sales agents for the copper produced by Tsumeb and O'okiep, and a substantial portion of the copper refined at one of the plaintiff's refineries was supplied by Tsumeb and O'okiep.

We next consider whether the trial court could reasonably conclude that there was centralization of management or other economies of scale between AMAX

and its subsidiaries, O'okiep and Tsumeb. Through its stock ownership in the two corporations,[8] AMAX controlled five of the ten seats on the O'okiep board of directors. Two of the ten O'okiep directors were AMAX directors and three other O'okiep directors were AMAX employees. Eleven of the fifteen Tsumeb directors were either AMAX directors or employees. Further, the parties stipulated that AMAX, together with an unaffiliated corporation, controlled, managed, and made all policy decisions regarding O'okiep and Tsumeb. The trial court could reasonably find that AMAX not only had the "potential" to control O'okiep and Tsumeb but actually exerted such control. *F. W. Woolworth Co.* v. *Taxation & Revenue Department,* supra, 362.

Having found functional integration, centralization of management and other economies of scale, and actual control by AMAX over O'okiep and Tsumeb, the trial court concluded that the plaintiff operated its subsidiaries as part of a unitary business. See *F. W. Woolworth Co.* v. *Taxation & Revenue Department,* supra, 364. Accordingly, the dividends and capital gain income received by the plaintiff from the sale of its O'okiep and Tsumeb stock constitutes business income, "income . . . derived from . . . intangible property, the acquisition, management and disposition of which constitute integral parts of the taxpayer's regular trade or business operations . . . ." General Statutes (Rev. to 1975) § 12-218 (2). Such business income "shall not be allocated . . . but shall be apportioned" in accordance with the apportionment scheme of § 12-218 (3). On appeal, we review the factual findings of the trial court to ensure that they were legally, logically and reasonably found, thereby allowing the trial court reasonably to conclude as it did. *Ruwet-Sibley Equipment Cor-*

---

[8] The parties stipulated that the plaintiff owned, at the time of the stock transfer, 29.556 percent of the stock in Tsumeb and between 21.6 percent and 17.27 percent of the stock of O'okiep.

*poration* v. *Stebbins,* 15 Conn. App. 21, 25, 542 A.2d 1171, cert. dismissed, 209 Conn. 806, 548 A.2d 437 (1988). Our review of the record discloses ample support for the court's findings and its conclusion that the plaintiff's dividend and capital gain income from the sale of its O'okiep and Tsumeb stock was integrally related to its business and thus apportionable under General Statutes (Rev. to 1975) § 12-218 (2).

There is no error.

In this opinion the other judges concurred.