ENTHONE, INCORPORATED *v.* TIMOTHY F. BANNON,
COMMISSIONER OF REVENUE SERVICES
(13594)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued May 9—decision released June 27, 1989

*W. Richard Smith, Jr.,* with whom, on the brief, was *Frank F. Coulom,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* acting attorney general, for the appellee (defendant).

CALLAHAN, J. This is an appeal by the plaintiff, Enthone, Incorporated (Enthone),[1] from a hazardous

---

[1] Enthone, Incorporated, is a New York corporation having its principal place of business in West Haven. Enthone, Incorporated, was at all relevant times authorized to do business in Connecticut.

waste assessment imposed by the defendant commissioner of revenue services (commissioner) pursuant to General Statutes § 22a-132.[2]

[2] "[General Statutes] Sec. 22a-132. HAZARDOUS WASTE ASSESSMENT. (a) There shall be paid to the commissioner of revenue services by (1) a generator of hazardous waste required to file a manifest pursuant to the Resource Conservation and Recovery Act of 1976 (42 U.S.C. 6901 et seq.), as from time to time amended, and regulations adopted by the department of environmental protection, (2) a treatment facility required to file a manifest for hazardous wastes resulting from their treatment process and (3) a generator of hazardous waste shipping hazardous waste to treatment or disposal facilities located in the state, an assessment of (A) five cents per gallon of metal hydroxide sludge from wastewater treatment of electroplating or metal finishing operations and six cents per gallon of any other hazardous waste entered on a manifest in gallons, (B) one-half of one cent per pound of metal hydroxide sludge from wastewater treatment of electroplating or metal finishing operations and three-quarters of one cent per pound of any other hazardous waste entered on a manifest in pounds or (C) ten dollars per cubic yard of metal hydroxide sludge from waste water treatment of electroplating or metal finishing operations and twelve dollars for any other hazardous waste entered on a manifest in cubic yards. Any residue resulting from the processing or treatment of a hazardous waste at a facility approved in accordance with the Resource Conservation and Recovery Act of 1976 (42 U.S.C. 6901 et seq.), as from time to time amended, shall not be subject to assessment, provided such residue is derived from hazardous waste received at the facility under a manifest. All assessments shall be due and payable to the commissioner of revenue services quarterly on or before the last day of the month immediately following the end of each calendar quarter. If the total assessment payable by any such generator or treatment facility for any calendar quarter is less than five dollars, such generator or treatment facility shall not be required to pay an assessment for such quarter. A generator who or treatment facility which pays an assessment for hazardous waste pursuant to this section shall not be further assessed for such hazardous waste provided such hazardous waste is stored or reshipped without change or treatment in the container in which the amount of the assessment is determined. The generator or treatment facility shall note reshipment on a manifest in such manner as the commissioner deems necessary.

"(b) Each generator or treatment facility of hazardous waste subject to the assessment as provided by this section shall submit a return quarterly to the commissioner of revenue services, applicable with respect to the calendar quarter beginning October 1, 1982, and each calendar quarter thereafter, on or before the last day of the month immediately following the end of each such calendar quarter, on a form prescribed by the commissioner,

On or about October 1, 1987, the commissioner issued a billing notice to Enthone for $5726.32, reflecting the commissioner's assessment[3] on hazardous waste material shipped by Enthone from its plant in West Haven during the period March 31, 1984, through December 31, 1986. Enthone disputed the assessment and, after an unfavorable final decision by the commissioner, appealed to the Superior Court. The Superior Court heard the matter on a stipulation of facts and the briefs of counsel and rendered a decision upholding the commissioner's assessment. Enthone appealed to the Appellate Court and we transferred the matter to this court pursuant to Practice Book § 4023. We find error.

Enthone is a manufacturer of specialty chemicals. Among other things, it manufactures products that are not hazardous waste when they leave Enthone's facil-

together with payment of the quarterly assessment determined and payable in accordance with the provisions of subsection (a) of this section.

"(c) Whenever such assessment is not paid when due, a penalty of ten per cent of the amount due or fifty dollars, whichever is greater, shall be added to the amount due and such penalty shall immediately accrue, and thereafter such assessment shall bear interest at the rate of one and one-half per cent per month until the same is paid. The commissioner of revenue services shall cause copies of a form prescribed for submitting returns as required under this section to be distributed throughout the state. Failure to receive such form shall not be construed to relieve anyone subject to assessment under this section from the obligations of submitting a return, together with payment of such assessment within the time required.

"(d) The revenue collected in accordance with this section shall be deposited in the emergency spill response fund established under section 22a-451. The commissioner of environmental protection is authorized to make expenditures from such revenue collected as necessary to cover expenses related to the collection of such assessment including, but not limited to, expenses for recording hazardous waste manifest data and for administration, except that the amount expended in any fiscal year for such purpose shall not exceed five per cent of the amount collected in such year. The assessment imposed by this section shall not apply to any state agency or any political subdivision or agency thereof.

"(e) The imposition and collection of the assessment shall terminate on June 30, 1990."

[3] This figure of $5726.32 includes interest and penalities.

ities and are shipped to its customers. Once the products are utilized by Enthone's customers, however, the resulting material is classified as hazardous waste. Some of Enthone's customers return this hazardous waste material to Enthone's West Haven facility for recycling. The hazardous waste material returned to Enthone by its customers is shipped under a hazardous waste manifest and Enthone's customers returning such material are assessed by the commissioner for their shipments under § 22a-132.

Once Enthone receives the hazardous waste material it makes a decision whether to recycle the material itself or to ship it on to a hazardous waste treatment facility for processing. The commissioner claims that the hazardous waste material not recycled by Enthone itself, but transshipped for treatment elsewhere, subjects Enthone to a hazardous waste assessment for the material shipped. Enthone, on the other hand, contends that because it does not generate the hazardous waste in question it is not subject to a hazardous waste assessment under the applicable statutes and regulations.[4]

The statutory authority for the imposition of a hazardous waste assessment by the commissioner is General Statutes § 22a-132 (a), which provides, in pertinent part, for the payment of a hazardous waste assessment by three categories of taxpayers: "(1) a *generator* of hazardous waste required to file a manifest pursuant to the Resource Conservation and Recovery Act of 1976 (42 U.S.C. 6901 et seq.), as from time to time amended and regulations adopted by the department of environmental protection, (2) a treatment facility required to file a manifest for hazardous wastes resulting from

---

[4] The hazardous waste assessment that is the subject of this appeal concerns only the hazardous waste that is returned to Enthone from its customers and transshipped elsewhere. Enthone does generate hazardous waste from some of its own manufacturing processes on which it pays a hazardous waste assessment.

their treatment process, and (3) a generator of hazardous waste shipping hazardous waste to treatment or disposal facilitites located in the state . . . . " (Emphasis added.)

Enthone obviously does not fall under subdivision (2) of § 22a-132 (a) because the hazardous waste at issue in the instant appeal did not "[result] from [Enthone's] treatment process." Nor does the commissioner claim that Enthone is liable for a hazardous waste assessment under subdivision (3) of § 22a-132 (a). The commissioner argues, rather, that Enthone is liable for a hazardous waste assessment under § 22a-132 (a) (1) because it must file the uniform hazardous waste manifest required by the Resource Conservation and Recovery Act of 1976 and is subject to state and federal environmental regulations applicable to generators of hazardous waste when it transships such waste to other facilities for treatment. See, e.g., Regs., Conn. State Agencies § 22a-449 (c)-5 (d) (3);[5] 40 C.F.R. § 262.10 (f);[6] 40 C.F.R. § 264.71 (c).[7]

Enthone does not dispute the fact that federal and state regulations require that it comply with the standards applicable to "generator[s]" of hazardous waste when it transships such material from its West Haven facility to other destinations. Nor does it contest that such regulations require it, when transshipping such material, to file a uniform hazardous waste manifest and to adhere to the same rigid state and federal

---

[5] Section 22a-449 (c)-5 (d) (3) of the Regulations of Connecticut State Agencies provides: "Whenever a shipment of hazardous waste is initiated from a facility, the owner or operator of that facility must comply with the requirements of Parts I, II, III, and IV of these regulations."

[6] 40 C.F.R. § 262.10 (f) provides: "An owner or operator who initiates a shipment of hazardous waste from a treatment, storage, or disposal facility must comply with the generator standards established in this part."

[7] 40 C.F.R. § 264. 71 (c) provides: "Whenever a shipment of hazardous waste is initiated from a facility, the owner or operator of that facility must comply with the requirements of Part 262 of this chapter."

requirements concerning packaging, labeling, marking, managing and disposing of hazardous wastes that apply to "generator[s]" of hazardous waste. It argues, however, that neither the statutes nor the regulations authorize the imposition of an assessment on hazardous waste that is not generated by the shipper. We agree.

General Statutes § 22a-132 (a) (1), the statutory authority cited by the commissioner for imposition of the hazardous waste assessment upon Enthone, states that the "generator" of hazardous waste is subject to a hazardous waste assessment. The statute does not state that an entity *treated* as a "generator" of hazardous waste for certain regulatory purposes is subject to a hazardous waste assessment. The term "generator" is not defined in the statutes. State and federal environmental regulations, however, both define a "generator" of hazardous waste as one "whose act or process *produces* hazardous waste . . . or whose act *first causes* a hazardous waste to become subject to regulation." (Emphasis added.) Regs., Conn. State Agencies § 22a-449 (c)-(1) (c);[8] 40 CFR § 260.10.[9] The activities of Enthone that are the subject of this appeal do not fit within either prong of that definition. The material in question was not produced by Enthone but only transshipped by Enthone for treatment. Further, the hazardous material in question was first subject to regulation, not when it was transshipped by Enthone, but when it was shipped to Enthone by the customer that produced it.

[8] Section 22a-449 (c)-(1) (c) of the Regulations of Connecticut State Agencies provides: " 'Generator' means any person or municipality, by site whose act or process produces hazardous waste identified or listed in accordance with Part I of these regulations or whose act first causes a hazardous waste to become subject to regulation."

[9] 40 C.F.R. § 260.10 provides: " 'Generator' means any person, by site, whose act or process produces hazardous waste identified or listed in Part 261 of this chapter or whose act first causes a hazardous waste to become subject to regulation."

It is true that Enthone did identify itself in the space labeled "Generator" on the uniform hazardous waste manifest form. That form was adapted from the federal environmental form, 40 C.F.R. part 262, and was designed to standardize industry practices and to eliminate multiple state manifests for interstate shipments of hazardous waste. Federal law prohibits any modification of the standardized form by state regulatory agencies. See D. Stever, Law of Chemical Regulation and Hazardous Waste (1986) § 5.03[4]. The form does, however, contain instructions and space allowing the entity labeled the "Generator" of hazardous waste on the form to cite and explain any reason for exemption from the assessment provisions of § 22a-132. It is undisputed that Enthone did avail itself of that opportunity to identify its shipments of the hazardous waste materials in question as "transshipments."

Under the circumstances stipulated to by the parties, the insertion of "Enthone, Incorporated" in the blank provided for the "Generator" on the uniform hazardous waste manifest when Enthone does not, in fact, fit the description of a "generator" of hazardous waste under the applicable regulations is insufficient to subject it to the assessment authorized by § 22a-132 (a) (1). The best that can be said for the commissioner's position is that § 22a-132 (a) (1) is ambiguous as it relates to the hazardous waste transshipped by Enthone. A taxing statute that is ambiguous must be construed in favor of the taxpayer and against the commissioner. *Hartford Parkview Associates Limited Partnership* v. *Groppo,* 211 Conn. 246, 249–50, 558 A.2d 993 (1989); *Zachs* v. *Groppo,* 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987); *AMAX, Inc.* v. *Groppo,* 17 Conn. App. 82, 86, 550 A.2d 13 (1988).

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.[10]

In this opinion the other justices concurred.

[10] Enthone also claims that § 22a-132 (a) (1), as interpreted by the commissioner, is unconstitutional. In view of our holding, it is unnecessary to reach the constitutional question. *Moore* v. *McNamara,* 201 Conn. 16, 20-21, 513 A.2d 660 (1986); *State* v. *Williams,* 200 Conn. 310, 322, 511 A.2d 1000 (1986); *State* v. *Onofrio,* 179 Conn. 23, 37-38, 425 A.2d 560 (1979).