TEXACO, INC. *v.* JOHN G. GROPPO, COMMISSIONER
OF REVENUE SERVICES
(13899)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued April 4—decision released May 22, 1990

*John F. Carberry,* with whom were *William H. Nar-
wold* and *Gordon S. Gilman,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with
whom, on the brief, was *Clarine Nardi Riddle,* attor-
ney general, for the appellee (defendant).

*Charles H. Lenore, Kenneth E. Werner* and
*Donald M. Griswold* filed a brief for the Connecticut
Business and Industry Association as amicus curiae.

PETERS, C. J. The sole issue in this tax appeal is the
applicability of the gross earnings tax imposed by Gen-

eral Statutes § 12-587[1] to sales in Connecticut of petroleum products that were marketed and distributed in states other than Connecticut. The department of revenue services included sales to out-of-state purchasers in its assessment of the gross earnings taxes owed by the plaintiff, Texaco, Inc., for sales made between October 1, 1980, and April 30, 1982.[2] After the defendant, John G. Groppo, commissioner of revenue services, denied the plaintiff's timely protest of this assessment, the plaintiff filed an appeal in the Superior Court pursuant to General Statutes § 12-597.[3] The trial court sus-

[1] General Statutes (Rev. to 1981) § 12-587 provides: "TAX ON GROSS EARNINGS OF PETROLEUM COMPANIES. RATE. Any petroleum company which is engaged primarily in the refining and distribution of petroleum products and distributes such products to wholesale and retail dealers for marketing and distribution in this state shall pay a quarterly tax at the rate of two per cent of gross earnings in each taxable quarter derived by such company from the sale of petroleum products in this state. No deduction shall be made from such gross earnings for any commission, rebate or other payment, except a refund resulting from an error or overcharge. Each such company shall, on or before the last day of January, April, July and October of each year, render to the commissioner of revenue services under oath of its treasurer or the person performing the duties of treasurer or of an authorized agent or officer, a return on forms prescribed or furnished by said commissioner, including in respect to such company the amount of gross earnings from the sale of petroleum products within this state for the quarter ending with the last day of the preceding month. The tax imposed under sections 12-587 to 12-602, inclusive, shall be in addition to any other tax imposed by Connecticut with respect to which such company is liable. For purposes of sections 12-587 to 12-602, inclusive, 'petroleum products' includes any product which contains or is made from petroleum or a petroleum derivative and 'gross earnings' are those earnings from the sale of petroleum products to which the sales factor is applied under subdivision (3) of section 12-218 and those earnings from such sales made by any corporation in which any such petroleum company owns not less than twenty-five per cent of the stock of such corporation."

[2] A related dispute between the parties concerned the taxability, under General Statutes § 12-587, of moneys collected by the plaintiff as a tax from its customers. That dispute was resolved in favor of the defendant in *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 522 A.2d 771 (1987).

[3] As required by General Statutes § 12-600, the plaintiff had previously paid, under protest, the full amount of its assessment for the additional taxes, interest and penalties.

tained the defendant's construction of § 12-587 and dismissed the plaintiff's appeal. We transferred to this court the plaintiff's subsequent appeal to the Appellate Court. Practice Book § 4023. We find error.

The stipulated facts include the following. The plaintiff, a Delaware corporation, is authorized to do business in Connecticut and operates terminals in East Hartford and New Haven. Between October 1, 1980, and April 30, 1982, the plaintiff supplied petroleum products to five distributors whose businesses and customers were located entirely outside the state. Title to the petroleum products passed to these out-of-state purchasers in Connecticut. The purchasers took delivery of the petroleum products in this state by sending their own vehicles or a common carrier to one of the plaintiff's Connecticut terminals. The purchasers certified, however, and the record revealed, that the petroleum products they bought in this state were all marketed and distributed in states other than Connecticut.

The trial court upheld the defendant's determination of the taxability of these transactions under § 12-587, the gross earnings tax. Although the court attached no significance to the passage of title in this state, it concluded that our statute, like the Uniform Division of Income for Tax Purposes Act, 7A U.L.A. (1978), unambiguously determines the taxability of gross earnings by reference to the place where goods are delivered to the purchaser rather than by the place of their ultimate destination.

Prior to its 1982 amendments, § 12-587 provided in relevant part: "Any petroleum company which is engaged primarily in the refining and distribution of petroleum products and distributes such products to wholesale and retail dealers for marketing and distribution in this state shall pay a quarterly tax at the rate

of two per cent of gross earnings in each taxable quarter derived by such company from the sale of petroleum products in this state. . . . For purposes of sections 12-587 to 12-602, inclusive . . . 'gross earnings' are those earnings from the sale of petroleum products to which the sales factor is applied under subdivision (3) of section 12-218 . . . ." In construing this text, we proceed from well established principles. First, because a tax appeal is not an administrative appeal under the Uniform Administrative Procedure Act, General Statutes § 4-186, the plaintiff is entitled to a plenary judicial review of its challenge of its tax assessment. *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* 202 Conn. 583, 588, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 421, 521 A.2d 569 (1987).[4] Second, because the applicability of § 12-587 to out-of-state purchases concerns the imposition of a tax rather than a claimed right to an exemption or a deduction, the issue must be resolved by strictly construing the statute against the taxing authority and in favor of the taxpayer. *Enthone, Inc.* v. *Bannon,* 211 Conn. 655, 661, 560 A.2d 971 (1989); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* supra; *Schlumberger Technology Corporation* v. *Dubno,* supra, 420–23. Third, our construction of § 12-587 must endeavor to

---

[4] The trial court correctly construed General Statutes § 12-587 without assigning special weight to its administrative construction by the department of revenue services. The department's construction of the statute is of relatively recent vintage and therefore "lacks the persuasiveness of a practical construction placed on legislation over many years." *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174, 479 A.2d 1191 (1984); *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420 (1955). Further, "construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987); *Dine Out Tonight Club, Inc.* v. *Department of Revenue Services,* 210 Conn. 567, 570 n.3, 556 A.2d 580 (1989).

ascertain and give effect to the apparent intent of the legislature primarily as expressed in the words of the statute itself, and secondarily in its legislative history and in the legislative policy that it was designed to implement. *Felia* v. *Westport,* 214 Conn. 181, 185, 571 A.2d 89 (1990); *State* v. *Grullon,* 212 Conn. 195, 199–200, 562 A.2d 481 (1989).

The plaintiff maintains that § 12-587, on its face, excludes sales to out-of-state purchasers. The statute purports to tax a petroleum company only insofar as it "distributes [petroleum] products to wholesale and retail dealers for marketing and distribution *in this state.*" (Emphasis added.) The parties' stipulation of facts states that "all of the petroleum products sold to the Out of State Purchasers were in fact transported out of Connecticut and marketed and distributed in states *other than Connecticut.*" (Emphasis added.) The trial court's memorandum of decision did not address the application of this part of § 12-587 to the stipulated facts.

A literal reading of the text of § 12-587 supports the plaintiff's argument that the legislature did not intend to tax the petroleum sales that are presently at issue. In light of our obligation to attach independent meaning to every phrase contained in a legislative enactment; *Costello* v. *Fairfield,* 214 Conn. 189, 193, 571 A.2d 93 (1990); *Rawling* v. *New Haven,* 206 Conn. 100, 112, 537 A.2d 439 (1988); *Peck* v. *Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 405, 294 A.2d 546 (1972); we cannot simply read the clause "in this state" out of § 12-587.

The defendant maintains, however, that the legislature intended the words "in this state" as a modifier of "wholesale and retail dealers" and not of "marketing and distribution." In support of this contention, the

defendant suggests that the legislature added "in this state" in order to establish a jurisdictional nexus with Connecticut; cf. *Cally Curtis Co.* v. *Groppo,* 214 Conn. 292, 297–99, 572 A.2d 302 (1990); rather than as a definition of the transactions to which the gross earnings tax applies. Because the defendant views the clause "in this state" as something other than a limitation on "marketing and distribution," the defendant urges us to construe § 12-587 to determine the taxability of petroleum product sales according to the place at which the products are delivered rather than the place of their ultimate destination. According to this reasoning, the plaintiff's sales fall within § 12-587 because its petroleum products were delivered to its out-of-state customers in Connecticut.

The defendant's construction of § 12-587 is, for two reasons, not easily reconcilable with the language of the statute itself. First and foremost, the defendant relies on a transposition of statutory language for which there is no authority. The statute plainly attaches the modifier "in this state" to the words "marketing and distribution" rather than to the words "wholesale and retail dealers." Second, in ascribing a jurisdictional function to the clause "in this state" when that clause follows the words "marketing and distribution," the defendant has failed to take account of the presence of the identical clause at the end of the same sentence in § 12-587. That statute measures a petroleum company's tax liability by the "gross earnings . . . derived by such company from the sale of petroleum products *in this state.*" (Emphasis added.) We may not treat as superfluous either of these two references to "in this state" in § 12-587. As the plaintiff contends, it seems likely that the legislature intended the use of "in this state" at the end of the sentence to incorporate the requisite jurisdictional nexus, while it intended the earlier usage to describe the range of transactions deemed tax-

able. A straightforward reading of the first sentence of § 12-587 in its entirety thus appears to refute the defendant's argument for the taxability of the plaintiff's sales to out-of-state purchasers.

The defendant nonetheless insists that the fact that § 12-587 contains a cross reference to subsection (3) of General Statutes § 12-218[5] requires us to construe § 12-587 as measuring the taxability of the plaintiff's sales by the place of delivery to out-of-state purchasers rather than by the place of destination. According to the defendant, the cross reference to § 12-218 implies that § 12-587 must encompass at least some multistate transactions since the function of § 12-218 is to attribute an appropriate portion of a multistate corporation's income to Connecticut for tax purposes. *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* supra, 594; *Schlumberger Technology Corporation* v. *Dubno,* supra, 416. Further, the defendant maintains that § 12-218 adopts a delivery rather than a destination standard when it defines attributable gross receipts to include "receipts from sales of tangible property if the property is delivered or shipped to a purchaser within this state . . . regardless of the f.o.b. point or other conditions of the sale . . . ." Although the trial court found this argument persuasive, we do not agree that the cross reference to § 12-218 contained in the final sentence of § 12-587 trumps the straightforward description of taxable transactions contained in the first sentence of § 12-587.

As a general matter, the defendant's reliance on the cross reference to § 12-218 raises a possible ambiguity with respect to the intended coverage of § 12-587.

---

[5] General Statutes (Rev. to 1981) § 12-218 (3) (b) provides in pertinent part: "The third fraction shall represent the part of the taxpayer's gross receipts from sales or other sources during the income year . . . including receipts from sales of tangible property if the property is delivered or shipped to a purchaser within this state . . . ."

It is not clear whether the cross reference had the broad objective of defining all aspects of the transactions that are taxable under § 12-587 or the narrower objective of determining the interstate allocation of those transactions insofar as they trigger § 12-218. Such a latent ambiguity must ordinarily be resolved in favor of the taxpayer, as we have noted above, because the issue remains the imposition of tax liability rather than entitlement to an exemption or a deduction. The plaintiff, accordingly, still prevails.

Even if we were to explore the merits of the defendant's expansive interpolation of the § 12-218 standard into § 12-587, we would still doubt the taxability of the plaintiff's sales to out-of-state purchasers. The usage, in § 12-218, of "delivered or shipped to a purchaser *within this state*" (emphasis added) is hardly an unambiguous direction to tax sales to purchasers who are *not* within this state. Indeed, the uniform holding of courts in other states interpreting essentially identical language has been that the destination of the goods, and not their delivery point, is dispositive. See *Department of Revenue* v. *Parker Banana Co.,* 391 So. 2d 762, 763 (Fla. App. 1980); *Strickland* v. *Patcraft Mills, Inc.,* 251 Ga. 43, 45, 302 S.E.2d 544 (1983); *Olympia Brewing Co.* v. *Commissioner of Revenue,* 326 Minn. 642, 648, 326 N.W.2d 642 (1982); *Dupps Co.* v. *Lindley,* 62 Ohio St. 2d 305, 307–308, 405 N.E.2d 716 (1980); *Pabst Brewing Co.* v. *Department of Revenue,* 130 Wis. 2d 291, 296, 387 N.W.2d 121 (1986); see also W. Pierce, "The Uniform Division of Income for State Tax Purposes," 35 Taxes (CCH) 747, 780 (1957); contra J. Hellerstein, State and Local Taxation (1983) ¶ 9.17 [1], pp. 584–88.[6]

---

[6] The trial court relied on a contrary regulation of the Multistate Tax Commission, an agency that issues regulations interpreting the Uniform Division of Income for Tax Purposes Act. 7A U.L.A. (1978). The trial court noted that General Statutes § 12-218 corresponds to § 16 (a) of the uniform

Finally, the plaintiff's position that § 12-587, at the time of these transactions, did not purport to impose a gross earnings tax on sales to out-of-state purchasers, finds some support in the 1982 amendment of this provision. Public Acts 1982, No. 82-157, §§ 1, 3. In 1982, the legislature enlarged § 12-587 to include both refiners and distributors within its ambit, but added General Statutes § 12-587a to allow a tax credit to offset the gross earnings tax upon certification that petroleum products were for resale or use outside the state of Connecticut. The legislative history does not speak directly to the import of the latter addition. There was, however, discussion of the fiscal impact of the amending package as a whole. 25 H.R. Proc., Pt. 6, 1982 Sess., p. 1929, Pt. 12, p. 3989. If the addition of § 12-587a had been intended as anything other than a procedural implementation of a preexisting understanding of the scope of § 12-587, it is likely that the fiscal consequences of a substantive change would have surfaced. We are therefore persuaded that, for present purposes, the 1982 amendments clarified the legislature's intent about the scope of the gross earnings tax in its 1980 version. Public Acts 1980, No. 80-71, §§ 1, 30. In view of the legislature's plenary authority to define the scope of tax statutes, the amended § 12-587 "must be accepted as the legislative declaration of the meaning of the original act." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 479, 493 A.2d 874 (1985); *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 540–41, 489 A.2d 363 (1985); *Neyland* v. *Board of Education,* 195 Conn. 174, 180, 487 A.2d 181 (1985).

act, but it recognized that this state has neither adopted the uniform act in its entirety nor become a signatory of the Multistate Tax Compact, under which the Multistate Tax Commission issues its regulations.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other justices concurred.