## RALSTON PURINA COMPANY v. COMMISSIONER OF REVENUE.

236 N. W. 2d 779.

December 12, 1975—No. 45435.

*Warren Spannaus,* Attorney General, and *Kenneth E. Raschke, Jr.,* Special Assistant Attorney General, for relator.

*John S. Morrison,* for respondent.

Heard before Peterson, Kelly, and MacLaughlin, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

The issue in this case involves the application of the three-factor formula for allocation of net income of a business carried

on partly within and partly without this state. Minn. St. 290.19.

Ralston Purina Company, the taxpayer, is based in St. Louis, Missouri, and is authorized to do business in Minnesota. It manufactures and sells food products both within and without Minnesota. Its sales in Minnesota are generated through independent broker representatives which have their offices in Minnesota and solicit orders for Ralston from Minnesota customers, principally from grocery retail chains and wholesalers.

The issue in this case arises from the mechanics of effectuating the disputed sales. The Minnesota broker solicits the order from the Minnesota customer. Upon receipt of an order, the broker prepares a new order on a different form which is sent to one of Ralston's warehouses outside Minnesota, depending upon the food commodity ordered. An acknowledgment, or confirmation, of the order is returned from that place to the broker, and shipment is made from that place directly to the customer. Ralston retains the right to reject the order for such reasons as unacceptable credit or unavailability of the commodity ordered. It appears that the latter is the more usual reason. When and if shipment is made of the ordered commodities, the customer is invoiced by Ralston, with an information copy being transmitted to its broker representative.

The sole function of Ralston's Minnesota broker representatives in the sales process is the solicitation of orders in Minnesota. Other sales-related functions are conducted by Ralston outside Minnesota, such as selection of markets, advertising and promotion of its food products, establishing credit-limitation criteria, shipping of approved orders, invoicing, and collecting amounts due.

Ralston did not allocate the disputed sales to Minnesota in its returns for the 1966 and 1967 tax years. The commissioner of revenue ordered that the sales be included. Upon Ralston's appeal to the Tax Court, the commissioner's order was set aside, that court being of the opinion that the sales were not allocable to

Minnesota under the statute. We are of a contrary opinion and reverse the Tax Court.

Minnesota imposes on foreign corporations either an excise tax for the privilege of transacting local business, or an income tax, both of which are measured by the taxpayer's taxable net income. Minn. St. 290.02, 290.03, and 290.06. Taxable net income is defined in § 290.01, subd. 22, as the net income assignable to Minnesota, and it is to be determined according to the rules set forth in §§ 290.17 to 290.20. The parties agree that this case is controlled by Minn. St. 1965, § 290.19.[1]

Section 290.19, subd. 1, sets forth a three-factor formula for determining what fraction of certain taxpayers' net income is assignable to Minnesota. Clause (1)(a) of this subdivision, which is the provision in issue, describes the percentage of a taxpayer's sales that are to be used in the formula:

"The percentage which the sales made within this state and through, from or by offices, agencies, branches or stores within this state is of the total sales wherever made."

We hold that the disputed sales should be included in the numerator of the fraction described in clause (1)(a).

In The Maytag Co. v. Commr. of Taxation, 218 Minn. 460, 463, 17 N. W. 2d 37, 39 (1944), we construed a provision which was substantially similar to clause (1)(a) of Minn. St. 1965, § 290.19, subd. 1, as reading in the disjunctive, meaning that the numerator should include both sales made within Minnesota and sales made through, from, or by offices, agencies, branches, or stores within Minnesota. The two provisions of this clause are separate and different. The first part of the clause, "sales made within this state," is a test which we characterize as based on the geography of the steps which go into the "making" of a sale; the second part of the clause is a test based on the geography, not of the steps, but of the persons who represent the seller. The

---

[1] This section has been amended effective January 1, 1974. L. 1973, c. 650, art. 7, § 2.

first test includes sales made in Minnesota, regardless of through whom they are made. The second test includes sales made through Minnesota offices, agencies, branches, or stores, regardless of where the sales are said to be made. The first is a test of what and where, while the second is a test of who and where. The disputed sales in this case are includable if they satisfy either of the two statutory tests.

Maytag explained an analysis to be used in applying the second part of clause (1)(a), whereas in this case we focus on the first part of the clause. The determination in Maytag was made by examining the sales-generating activities and ascertaining the situs of those activities. The Maytag Company maintained a branch manager in Minnesota who was generally responsible for the organization and supervision of sales activities in a multistate area which included Minnesota. The branch manager interpreted the policies of the company, kept the regional managers (salesmen) active, and made recommendations to the home office as to employment and discharge of sales personnel. His salesmen both lived and worked outside Minnesota. He designated which customers the sales force could call on. The activities of the salesmen were limited essentially to soliciting orders.

We held in Maytag that the situs of the sales-generating activities was in the office of the branch manager, not in the headquarters (homes) of the individual salesmen and that because the branch manager was officed in Minnesota, the sales brought about by his sales force were sales made through an "office, agency, branch, or store" within this state.

The first part of clause (1)(a), which has not heretofore been construed in our cases, requires the inclusion of "sales made within this state" in the numerator.[2] The parties in this case

---

[2] Taxpayer Ralston urges that this part of the clause was not argued in the Tax Court. The commissioner, however, did argue that the clause as a whole calls for inclusion of the disputed sales. On the record in this case the question is properly presented for our decision, and a remand would only serve to protract this litigation.

have not argued Maytag's "situs of the sales-generating activities" analysis, and because of our disposition under the first part of clause (1)(a), we find no need to discuss how the second test stated in that clause might be applied to the facts in this case.

The overall purpose of the statute is to tax the Minnesota portion of the taxpayer's net income. Clause (1)(a) of the three-factor formula in § 290.19, subd. 1, was intended to describe those sales which may reasonably be allocated to Minnesota. Numerous steps go into the making of a sale; these include at least the steps from solicitation of customers to consumation of a contract of sale. If all of the steps which go into the making of a sale take place within the geographical bounds of Minnesota, the sale is then unquestionably allocable to Minnesota. The question here is the extent to which the steps that go into the making of a sale must take place outside Minnesota before the sale cannot fairly be said to be "made" in Minnesota for tax purposes.

When in any sale Minnesota is the situs of as many of the steps which go into its making as was true in this case, and when those steps are of such a character and importance as was true in this case, the legislature intended that such sale be included as a sale "made within this state" for purposes of this statute.

Notwithstanding Ralston's vigorous contention that these contracts for sale were technically consummated outside Minnesota, we do not think that the legislature intended the location of this single step in the total sales process to be critical. We similarly consider other steps in the total sales process which occurred outside Minnesota, such as promotional activities and policy decisions, to be less important than those that occurred within Minnesota. What is inescapable about the disputed sales is that Minnesota brokers called on Minnesota customers to solicit their orders, the customers placed their orders in Minnesota, the goods were shipped to the customers in Minnesota, and the customers received their invoices in and made their payments from Minnesota. We conclude, on this record, that the disputed sales are fair-

ly allocable to Minnesota and that for purposes of Minn. St. 1965, § 290.19, they were made within this state.

Reversed.