**OLYMPIA BREWING COMPANY,**
**Relator,**

v.

**COMMISSIONER OF REVENUE,**
**Respondent.**

**No. 82–429.**

Supreme Court of Minnesota.

Nov. 24, 1982.

---

Briggs & Morgan, John M. Sullivan and Steven Z. Kaplan, St. Paul, for relator.

Warren Spannaus, Atty. Gen., and Paul R. Kempainen, Spec. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

SIMONETT, Justice.

The tax court, affirming an assessment of the Minnesota Commissioner of Revenue, held that beer picked up at the taxpayer's brewery in Minnesota by out-of-state distributor-purchasers in their own trucks for transportation and resale outside Minnesota constituted sales made *within* Minnesota for purposes of Minn.Stat. § 290.19 (1980). We disagree with the tax court's interpretation of the statute and reverse.

During 1975 and 1976 relator Olympia Brewing Company operated a brewery in St. Paul, Minnesota, and sold its beer to some 310 wholesale distributors who were conducting business in 15 states, including Minnesota. Olympia prepared a "product scheduling worksheet" for each distributor based upon data showing each distributor's past purchases. Olympia provided each distributor with its worksheet as well as a preprinted purchase order form. The distributor would review the worksheet and note on the order form any changes in the quantity of beer desired. The distributor would also indicate the method of shipment to be used, *i.e.*, by rail or truck. If the distributor specified shipment by truck, one of three modes of transportation could be used: common carriers, contract carriers (transportation companies having contracts with the distributor), or use by the distributor of his own trucks to make pickup at the St. Paul brewery. During 1975 and 1976, approximately 34.7% of all Olympia sales made to out-of-state distributors were picked up by these distributors using their own trucks.

For all truck transportation, Olympia prepared a straight bill of lading the day before loading the truck. These bills of lading indicated the name of the carrier, the date, the quantity of goods sold, the name of the consignee, and the destination of the truck. If the distributor was using his own truck for transportation, the words "their truck" or "picked up" would appear on the bill of lading. After the bills of lading were completed, they were hand carried to Olympia's loading dock foreman and were used to fill the distributors' orders. After the beer was loaded onto the truck, the truck driver signed the original copy of the bill of lading and was given a copy. On the day after the truck was loaded, Olympia prepared sales or memorandum invoices which were mailed to the wholesale distributors. In addition, Olympia prepared monthly shipping reports for each state.

Since Olympia carried on a trade or business partly within and partly without Minnesota as contemplated by Minn.Stat. § 290.17, subd. 2(4) (1981), it apportioned its net income to Minnesota according to the sales, tangible property, and payroll factors

specified in section 290.19, subd. 1 (1980). In computing the sales-within-Minnesota factor, Olympia excluded all beer sold by its St. Paul brewery to out-of-state wholesale distributors and included all beer sold by the St. Paul brewery to Minnesota wholesale distributors. Olympia made this computation through use of the bills of lading and sales or memorandum invoices which it had prepared for each sale.

On audit examination, the Commissioner of Revenue agreed with Olympia that the sales to out-of-state distributors wherein the beer was transported by rail or by common or contract truck carriers were properly classified as sales made *outside* of Minnesota. The commissioner, however, determined that the pickup sales, where the out-of-state distributor picked up the beer in Minnesota with his own trucks and then transported it out of state, should have been classified as Minnesota sales.

Olympia does not trace the commercial routing of its beer after sale to a distributor. Neither party, however, could identify any instances in which beer sold by Olympia's St. Paul brewery to an out-of-state distributor was later sold by that distributor in Minnesota or to any other party for resale within this state. The tax court found additional verification of the destination of Olympia's sales to out-of-state distributors through state labeling requirements for beer sold by wholesale distributors. Assuming these requirements were complied with (noncompliance subjects the distributor's beer to confiscation), which label ("strong beer" or "low beer") Olympia placed on a container, if any, would indicate the intended destination of the beer.

## I.

The issue before us, then, is this: Is beer picked up dockside at the taxpayer's St. Paul brewery by out-of-state distributors in their own trucks for transportation and resale outside Minnesota a sale within or without Minnesota?

We look first at the pertinent statute. Minn.Stat. § 290.19, subd. 1(2)(a) (1980), provides for apportionment of income for taxpayers conducting business partly within and partly without Minnesota based on the percentage obtained by taking the arithmetic average of three percentages: the percentage of the taxpayer's tangible property in this state to the taxpayer's tangible property wherever situated; the percentage of the taxpayer's payrolls in this state to the taxpayer's payrolls for its entire business; and a sales percentage, being—

> The percentage which the sales, gross earnings, or receipts from business operations, in whole or in part, within this state bear to the total sales, gross earnings, or receipts from business operations wherever conducted.

Subdivision 1a then sets out the rule for determining whether or not sales are made "within this state." This subdivision, the interpretation of which is critical, reads:

> Sales of tangible personal property are made within this state if the property is delivered or shipped to a purchaser within this state, and the taxpayer is taxable in this state, regardless of the f.o.b. point or other conditions of the sale.

The commissioner asserts that the meaning of the statute is plain. If the goods are "delivered or shipped * * * within this state," it is a sale within this state, and here the out-of-state distributor obviously takes delivery and possession of the beer within Minnesota, to be precise, at Olympia's Minnesota loading dock. In other words, the commissioner contends that the phrase "within this state" modifies "delivered or shipped" rather than "purchaser," making the purchaser's physical possession of the goods within Minnesota the key event. It is this interpretation that the tax court adopted.

On the other hand, Olympia argues that a sale within this state is a sale "to a purchaser within this state," *i.e.*, to a purchaser located in Minnesota. In other words, the phrase "within this state" modifies "purchaser" and not "delivered or shipped," thereby making the purchaser's business location the key fact.

## II.

Contrary to the commissioner's assertion, we do not think the meaning of section 290.19, subd. 1a, is plainly evident. Consequently, to ascertain legislative intent, we must consider the factors given in Minn. Stat. § 645.16 (1980).[1] We find it helpful here to discuss, in particular, first, the legislative history of the statute, its occasion and necessity; next, the impact of the uniform law from which our statute was taken; and, finally, the practical consequences of the language interpretations urged by the parties.

A. The 1973 amendment of section 290.-19 eliminated the "office test" method of apportionment of income. The "office test" was so called because whether a taxpayer maintained an office without the state was dispositive of whether a sale should be allocated to that other state. Minn.Stat. § 290.19, subd. 1(4) (1953) (amended 1973). Under the "office test" this court was required to analyze the manner in which a taxpayer marketed its products, solicited and negotiated sales, and shipped the goods. See, e.g., Grain Belt Breweries, Inc. v. Commissioner of Taxation, 309 Minn. 190, 243 N.W.2d 322 (1976); Ralston Purina Co. v. Commissioner of Revenue, 306 Minn. 321, 236 N.W.2d 779 (1975).

As Olympia points out, a taxpayer could easily structure transactions artificially around the "office test" to minimize income tax liability in Minnesota. Significantly, the revised apportionment statute as it exists today involves no inquiry into the taxpayer's sales-marketing activities; rather, the focus is now on where delivery or shipment to a "purchaser within this state" is effected. While the contemporaneous legislative history of section 290.19 reveals nothing as to the specific mischief to be reme-

died or the object to be attained, it appears likely the revision was to ensure greater tax revenue by making more difficult the restructuring of sales to avoid Minnesota's income tax. This object is satisfied if Olympia's statutory interpretation is adopted, since the purchaser's business location is not likely to be changed by the distributor solely for Olympia's benefit. Conversely, the commissioner's interpretation permits the taxpayer to structure a delivery that affords the greatest tax savings.

Tax avoidance aside, the legislature also had apparent concerns about uniformity with other states to make Minnesota more attractive to business. A Minnesota Tax Study Commission submitted a report to the legislature in January 1973 just before the "office test" was abandoned, in which it advocated changing the then-existing basis for apportionment of sales. The commission stated:

> Under present Minnesota law a sale is counted at the place where it originates. Most states use the destination of a sale as the basis for determining whether it is attributable to them for allocation purposes. The origin basis tends to make it harder on Minnesota businesses selling out of state from Minnesota offices. On the other hand, the destination sales basis would act as an incentive to Minnesota firms selling their products out of state.

State of Minnesota Tax Study Commission, Report of Preliminary Recommendations to the Governor and the 1973 Legislature (Jan. 1973).

Classifying dock pickup sales as out-of-state sales is not necessarily required, of course, to ensure incentives for Minnesota export firms. A move away from the "office test" to a test permitting classifying as Minnesota sales those sales where the dis-

---

1. Minn.Stat. § 645.16 (1980) provides:

   When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:
   (1) The occasion and necessity for the law;
   (2) The circumstances under which it was enacted;
   (3) The mischief to be remedied;
   (4) The object to be attained;
   (5) The former law, if any, including other laws upon the same or similar subjects;
   (6) The consequences of a particular interpretation;
   (7) The contemporaneous legislative history; and
   (8) Legislative and administrative interpretation of the statute.

tributor clearly takes physical possession outside of Minnesota, also provides substantial incentives to Minnesota export firms to remain in Minnesota. Although the legislative history is not conclusive, it does seem to be consistent with the expressed purpose of the Minnesota Tax Commission, in providing a more favorable business climate, to classify dock pickup sales as out-of-state sales unless the distributor has a central warehouse in Minnesota.

B. In 1957 the National Conference of Commissioners on Uniform State Laws approved the Uniform Division of Income for Tax Purposes Act (UDITPA). Section 16(a) of this uniform act defines sales within a state in precisely the same language used by the Minnesota legislature in adopting section 290.19, subd. 1a. Thus, decisions made under UDITPA and opinions of commentators may be helpful to us in construing our statute.[2] The Multistate Tax Commission in its amicus brief claims that no state tax administrator has construed or implemented the sales factor definition differently than the position taken by the tax commissioner in this case. If so, the argument is not without weight. The commission, however, cites only administrative determinations made in Pennsylvania and California. Olympia, on the other hand, cites as contrary authority a Florida decision, *Department of Revenue v. Parker Banana Co.,* 391 So.2d 762 (Fla.App.1980), and an unreported Tennessee decision. At best,

the authorities cited by the parties indicate that there is not a unanimity of opinion as to the meaning of the phrase "within this state" in section 16 of UDITPA.

Neither are statements made by commentators on the underlying policies of UDITPA, although helpful, necessarily dispositive here.[3] Essentially, these authorities recognize that the primary importance of the sales factor is to offset the tendency of the property and payroll factors to favor the state of origin or production rather than the purchaser's location, or the state of destination. While the commentators do not specifically address the classification of dock pickup sales, it does seem clear that the sales factor is retained in the three-factor apportionment formula so that the contribution of the destination state to the gross income generated by the taxpayer is recognized.

The commissioner also argues that regulations pertaining to section 16(a) of UDITPA adopted by the Multistate Tax Commission support his position.[4] We do not think so. For example, Reg. IV of UDITPA, section 16(a)(3) says that "[p]roperty is delivered or shipped to a purchaser within this state if the shipment terminates in this state, even though the property is subsequently transferred by the purchaser to another state." The commissioner says this means Olympia's shipment terminates when the goods are physically transferred to a

---

**2.** Olympia argues we should not look to interpretation of section 16 of UDITPA since Minnesota did not adopt the "throwback" provision of the uniform act. The "throwback" provision assigns to the seller's state, here Minnesota, the receipts from sales if the sale is not subject to taxation in the state where the purchaser is located. The reason stated, however, by the Minnesota Tax Commission for not adopting the "throwback" rule was that "it would adversely affect those multistate corporations which sell a large part of their product to the federal government." We see no reason, therefore, not to look to the uniform act for whatever guidance it might provide. State of Minnesota Tax Study Commission, Report of Preliminary Recommendations to the Governor and the 1973 Legislature at 6 (Jan. 1973).

**3.** *See, e.g.,* Keesling and Warren, *California's Uniform Division of Income for Tax Purposes*

*Act, Part II,* 15 U.C.L.A.L.Rev. 655, 671 (1968); Sharpe, *State Taxation of Interstate Businesses and the Multistate Tax Compact: The Search for a Delicate Uniformity,* 11 Colum.J.L. & Soc. Probs. 231, 242; Cox, *The NCCUSL Uniform Apportionment Formula,* Taxes (August 1964) at 533–34; Wilkie, *Uniform Division of Income for Tax Purposes,* Taxes (January 1959) at 66, 73; Britton, *Taxation Without Representation Modernized,* 46 A.B.A.J. 526, 529 (1960).

**4.** These same regulations were proposed by the Minnesota Commissioner of Revenue in 1976 but were never adopted. *See* 1 S.R. 131–133 (1976). Nonetheless, the same language as appears in the UDITPA regulations and in the proposed, unadopted regulations also appears on Minnesota Apportionment Information Form M–5, although the examples given in the regulations are not reprinted on the tax form.

distributor who comes into Minnesota for a pickup. But this position is inconsistent with the commissioner's other argument that there is a distinction between "delivered" and "shipped" and that when a distributor comes into Minnesota with his own trucks to pick up the goods, only a delivery and not a shipment occurs. The regulation says that "if the *shipment* terminates in this state" there is a delivery or shipment within this state and the sale is deemed a Minnesota sale. Even under the commissioner's view, no "shipment" has occurred at the brewery's dock.

The commissioner ignores the example given following the regulation of a purchaser who maintains a central warehouse in this state to receive all purchases before reshipping out of state. Contrary to the commissioner's contention, the fact that an out-of-state purchaser maintains a central warehouse in Minnesota at which all merchandise purchases are received would be of the utmost significance in classifying such a sale as being within Minnesota. In such a case—which is not our case—there has been a shipment which terminates within this state. Thus, Reg. IV of UDITPA, section 16(a)(3), if anything, lends support to Olympia's interpretation of the sales "within this state" provision.

C. To sum up, neither the legislative history nor the uniform act specifically resolves the question of how dock pickup sales should be treated but they tend to support the view that such sales are not "within this state." Certain practical considerations decide the issue conclusively.

1. We believe the fatal weakness in the commissioner's position is his inability to justify treating differently a sale where the out-of-state distributor picks up the goods in his own trucks from a sale where the same distributor has a common or contract truck carrier pick up the goods at the same dock, f.o.b. seller's place of business. True, the statute says the f.o.b. point or other conditions of sale should not be considered; nonetheless, the anomaly which inheres in the commissioner's argument makes such a consideration necessary. Assume the com-

missioner's position to be correct: that "within this state" modifies "delivered or shipped" so that the triggering event is the purchaser's taking physical possession within Minnesota. When delivery is made f.o.b. seller's place of business, physical delivery is tendered within Minnesota to the same extent as for a dock pickup sale. The buyer in an f.o.b. seller's place-of-business transaction in effect takes delivery through his agent, the carrier. Yet the commissioner concedes that an f.o.b. seller transaction is an out-of-state sale where a common or contract carrier is used. This result makes the selection of mode of transportation dispositive, which, as even the commissioner concedes, would be contrary to the statutory language.

We think that to distinguish between a sale within or without the state on the basis of the mode of transportation—whose truck does the transporting—is an untenable distinction. It is not in keeping with the general policies of the 1973 amendment. Further, there is nothing in the legislative history, regulations, articles of commentators or case law that compels the interpretation of the statute as urged by the commissioner.

■ 2. One further comment is necessary. The commissioner and the Multistate Tax Commission contend that Olympia's position should not be adopted because it is unworkable since a final destination can never be determined and because collection of the taxes would be unduly burdensome for the commissioner. We disagree. Olympia is not suggesting that the location of the final consumer, after resale upon resale, be determinative of the sales classification. The inquiry ends when it is determined where the initial purchaser is located; it is there that shipment and delivery terminate. As to where the product is delivered or shipped, this can be easily traced through bills of lading and other indicia of sale. This burden of proof is, of course, on the taxpayer, not the commissioner. If the taxpayer cannot prove that its products were delivered or shipped to an out-of-state destination, the commissioner's classification of

a sale within Minnesota will stand. In any event, administrative ease, while a legitimate concern, does not justify an interpretation of a statute which is inconsistent with its purpose (here, to recognize the contribution of the consumer's or purchaser's state). *See Sellner Manufacturing Co., Inc. v. Commissioner of Taxation,* 295 Minn. 71, 75, 202 N.W.2d 886, 889 (1972).

■ D. We hold, therefore, that the merchandise pickup at the taxpayer's brewery in Minnesota by out-of-state distributors in their own trucks for transportation and resale outside Minnesota does not constitute a sale within this state for income tax apportionment under Minn.Stat. § 290.-16 (1980).

Reversed.