HERCULES INCORPORATED,
Plaintiff and Petitioner,

v.

UTAH STATE TAX COMMISSION,
AUDITING DIVISION, Defendant
and Respondent.

No. 930051.

Supreme Court of Utah.

June 10, 1994.

Randy M. Grimshaw, Maxwell A. Miller, Keith E. Taylor, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., Brian L. Tarbet, Asst. Atty. Gen., Salt Lake City, for defendant.

ZIMMERMAN, Chief Justice:

Hercules Inc. petitioned this court for review of a franchise tax deficiency assessed by the Utah State Tax Commission. The Commission found a deficiency in franchise taxes paid by Hercules for the years 1977 through 1980 on missile motor parts sold to Lockheed Missiles & Space Company. After the Commission assessed the deficiency, Hercules petitioned for a redetermination. The Commission held a formal hearing and affirmed the deficiency. Following a trial de novo on the record under section 59–1–603(1) of the Code,[1] the district court reversed the Commission, holding that the sales in question were not "Utah sales" within the meaning of sections 59–13–92 and –93 of the Code.[2] The sales were therefore improperly included in calculating Hercules' franchise tax liability. The Commission appealed. The Utah Court of Appeals reversed the district court, holding that the sales in question were Utah sales and thus subject to the franchise tax. *Hercules Inc. v. Utah State Tax Comm'n*, 845

P.2d 941 (Utah Ct.App.1992). We affirm the court of appeals.

We first summarize the relevant facts as found by the Commission. During the audit period, 1977 through 1980, Lockheed had a prime contract with the United States to build Trident missiles. Lockheed subcontracted with Hercules to build the solid-fuel rocket motors for the missiles. Hercules manufactured the motors at its Bacchus, Utah, facility. Lockheed inspected and accepted the motors at Bacchus, and title legally passed from Hercules to Lockheed and from Lockheed to the United States at Bacchus. The motors were then shipped from Utah via common carrier to military assembly facilities in either Washington or California. Once there, Lockheed assembled the motors and other missile components into the actual missile. Hercules provided supervision and other support services during this assembly.

Utah imposes a franchise tax under chapter 7, title 59 of the Code on the net income of corporations for the privilege of doing business in Utah.[3] Utah has adopted the Uniform Division of Income for Tax Purposes Act ("UDITPA"), which sets forth the method for apportioning the income of corporations that have income derived from, or attributable to, sources both inside and outside the taxing state. *See* Utah Code Ann. § 59–7–303(1). Under UDITPA, each state multiplies a corporation's total income by a fraction designed to reflect the income attributable to sources within that taxing state; the state then taxes this income. Utah Code Ann. § 59–7–311; *see* William J. Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747, 750 (1957). The numerator of this fraction is the sum of three factors, the property factor, the payroll factor, and the sales factor; the denominator is three.

---

**1.** Section 59–1–603 has been replaced by the Utah Administrative Procedures Act, ch. 161, § 314, 1987 Utah Laws 830, 980.

**2.** These sections were renumbered sections 59–7–317, –318 by Title 59—Phase II Recodification, ch. 2, §§ 156, 157, 1987 Utah Laws 59, 112.

**3.** During the period relevant to this case, the corporate franchise-tax portion of the Code was codified at chapter 13, title 59. In 1987, this section was renumbered chapter 7 of title 59 by Title 59—Phase II Recodification, ch. 2, §§ 73 to 161, 1987 Utah Laws 59, 87–113. For convenience, this opinion hereinafter uses the Code sections as currently numbered, except where otherwise noted.

The sales factor for Hercules during the audit period is at issue in this case. Section 59–7–317 defines the sales factor as "a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." Utah Code Ann. § 59–7–317. Section 59–7–318 delineates which sales of personal tangible property are deemed to be made in Utah or, in other words, "Utah sales." This section states in relevant part, "Sales of tangible personal property are in this state if ... the property is delivered or shipped to a purchaser ... within this state, regardless of the f.o.b. point or other conditions of sale." Utah Code Ann. § 59–7–318.

The Commission determined that the motor sales were Utah sales under Code section 59–7–317 and thus properly included within the calculation of Hercules' franchise taxes. The Commission based this decision on its findings that (i) final delivery of the motors took place at Bacchus; (ii) at the time of delivery the motors were a final product for purposes of taxation; and (iii) Lockheed was "a purchaser 'within this state,' by virtue of its property, payroll, and sales here." *Hercules Inc. v. Auditing Div.*, No. 83–0078, slip op. at 7 (Utah State Tax Comm'n Oct. 4, 1988).

The district court reversed the Commission on the ground that "[t]he 'property' that was sold by Hercules to Lockheed under the subcontract ... was a functional rocket motor [that] could be fired when the manufacturing process was completed." *Hercules Inc. v. Utah State Tax Comm'n*, No. 880907117 CV, slip op. at 5 (Utah Dist.Ct. Feb. 1, 1991). In other words, the district court reasoned that Hercules did not deliver a fully functional rocket motor to Lockheed in Utah, although title to the motors passed to Lockheed upon completion of the manufacturing performed at Bacchus. Such a functional unit came into existence only after further assembly of the entire missile at a seaport in Washington or California. Consequently, according to the district court, "The

manufacturing process of the rocket motors was completed in the states of Washington and California, not Utah," and final delivery took place in those states. *Id.* at 11–12. The court concluded that the rocket sales were interstate sales properly allocated to Washington and California using the "destination rule." [4] *Id.* at 14–15.

In reversing the district court, the Utah Court of Appeals held that the subcontract between Hercules and Lockheed was for rocket motors that were to be used by Lockheed as component parts in building the actual missiles. *Hercules Inc. v. Utah State Tax Comm'n*, 845 P.2d 941, 943 (Utah Ct. App.1992). The court of appeals reasoned that the subject matter of the subcontract between Hercules and Lockheed was the rocket motors, as they existed upon completion of the manufacturing process at Bacchus. *Id.* at 941. The court of appeals thus held that the district court had incorrectly applied section 59–7–318 in finding that these sales were not Utah sales. *Id.* at 943–44. Further, because Lockheed was doing business in Utah and was a Utah purchaser and the motors were delivered to Lockheed within Utah, the sales were Utah sales under Code section 59–7–318 and properly included in the sales factor when calculating Hercules' franchise tax liability. *Id.* at 944.

In its petition for certiorari, Hercules contends first that the destination rule makes the sales either Washington or California sales, not Utah sales. Second, it argues that it has been taxed twice on the same transaction, once by Washington or California and again by Utah, in violation of the Commerce Clause of the United States Constitution. We address these arguments in order.

■ Hercules first argues that in calculating a corporation's tax liability, UDITPA case law from other states and scholarly commentary uniformly conclude that the destination rule should govern the characterization of sales. Under that rule, the destination of the goods sold determines the location

4. The destination rule is used to determine how to allocate, as between states, revenues derived from interstate sales. Under the destination rule, goods are deemed to have been sold in the market state or the state of final destination. *Department of Revenue v. Parker Banana Co.*, 391 So.2d 762, 763 (Fla.Dist.Ct.App.1980).

of the sale, rather than the point at which title passes or other conditions of the sale that the parties can manipulate. Hercules contends that the rocket motors in question were ultimately shipped to and "consumed" in Washington or California, and thus, the destination rule requires that we characterize the sales as occurring in one of those states.

■ The interpretation of sections 59–7–317 and –318 of the Code presents a question of law, which we review for correctness. *See Sandy City v. Salt Lake County*, 827 P.2d 212, 218 (Utah 1992); *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990). On questions of statutory construction, we first consider the plain language of the statute. "Only if we find some ambiguity need we look further." *Shurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991); *see Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989).

■ Section 59–7–318(1) states, "Sales of tangible personal property are in this state *if ... the property is delivered or shipped to a purchaser ... within this state*, regardless of the f.o.b. point or other conditions of the sale." (Emphasis added.) In this case, the motors were transferred to Lockheed, a Utah purchaser, in Utah, as finished components to be used by Lockheed in building the actual missiles. This makes the sales Utah sales for purposes of the statute.

■ The district court found, "The 'property' that was sold by Hercules to Lockheed was a functional rocket motor [that] could be fired when the manufacturing process was completed." *Hercules Inc. v. State Tax Comm'n*, No. 880907117 CV, slip op. at 5 (Utah Dist.Ct. Feb. 1, 1991). This led the

district court to conclude that the property was not delivered until the missile's manufacturing process was completed at the seaport assembly point. *Id.* at 11–12. The court of appeals disagreed with this characterization of the contract's terms. *Hercules Inc. v. Utah State Tax Comm'n*, 845 P.2d 941, 943 (Utah Ct.App.1992). We agree with the court of appeals. The sale between Hercules and Lockheed is completed prior to Lockheed's final installation of the motors as part of the missile assembly process. The subcontract between Hercules and Lockheed was for motors that could be used by Lockheed in assembling the missiles and would be functional when the process was completed (similar to a warranty). The sale of the motors from Hercules to Lockheed was completed in Utah in accordance with section 59–13–93 of the Code. Although final assembly was required to produce a missile, this did not make the sale of the finished motors incomplete upon delivery at Bacchus.

■ Further, we reject Hercules' argument that the destination rule applies here. That rule applies only to interstate sales. Hercules would have us read the statute to require "consumption" and thus make these transactions interstate. The statute does not use the term "consumption," and the location of consumption of the goods cannot be read into the statute to defeat its plain language.

■ For purposes of Hercules' Utah franchise tax liability, the status of the sales is "simply determined by whether such property, when sold, is delivered or shipped to a purchaser within" Utah.[5] *Bullock v. Enserch*

---

5. Hercules' reliance on comments by Professor William Pierce, an expert on UDITPA, is misplaced. *See* William J. Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747 (Oct. 1957). Even if the destination rule applied to this case, Utah would be considered the manufacturing state and the consumer state. Under the destination rule, the location of the purchaser determines the destination of the goods because the words "within this state" in the statute modify the word "purchaser." *See Pabst Brewing Co. v. Wisconsin Dep't of Revenue*, 130 Wis.2d 291, 387 N.W.2d 121, 123 (Ct.App.) ("[T]he location of the purchaser controls."), *review denied*, 130 Wis.2d 544, 391 N.W.2d 209 (1986). Hercules stipulated that Lockheed was doing business in Utah. Because Lockheed was

a Utah purchaser, not an out-of-state purchaser, the motor sales were Utah sales.

Hercules cites a number of cases in which the destination rule was applied and contends that they require us to decide this case in its favor. Every case is factually distinguishable from the case at hand. All but one involve *out-of-state purchasers* making dock sales in which the purchasers only came in-state to pick up the goods sold. These include *Texaco, Inc. v. Groppo*, 215 Conn. 134, 574 A.2d 1293, 1294 (1990); *Department of Revenue v. Parker Banana Co.*, 391 So.2d 762, 762–63 (Fla.Dist.Ct.App.1980); *Strickland v. Patcraft Mills, Inc.*, 251 Ga. 43, 302 S.E.2d 544, 544 (1983); *Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642, 644 (Minn.1982);

*Exploration, Inc.,* 614 S.W.2d 215, 217 (Tex. Civ.App.1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1445, 71 L.Ed.2d 659 (1982). Hercules delivered the motors to Lockheed in Utah, making the sales Utah sales properly included in the calculation of Hercules' franchise tax liability.

Hercules next argues that Utah has imposed a double tax on Hercules' income in violation of the Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8. That provision requires the fair apportionment of income among the taxing states. *See Goldberg v. Sweet,* 488 U.S. 252, 260–61, 109 S.Ct. 582, 588–89, 102 L.Ed.2d 607 (1989). Hercules contends that California and Washington properly taxed Hercules using the destination rule and that Utah's taxation of the same income unfairly ignores California's and Washington's contributions to the production of that income.

 Whether Utah's taxation of the income produced by the sales between Hercules and Lockheed violates the Commerce Clause is a question of law, which we review for correctness. *See Questar Pipeline Co. v. Utah State Tax Comm'n,* 817 P.2d 316, 317–18 (Utah 1991); *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 667 (Utah 1991). To prevail on a Commerce Clause challenge, a taxpayer "must demonstrate that there is 'no rational relationship between the income attributed to the state and the intrastate values of the enterprise'" being taxed. *Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 180, 103 S.Ct. 2933, 2948, 77 L.Ed.2d 545 (1983) (quoting *Exxon Corp. v. Wisconsin Dep't of Revenue,* 447 U.S. 207, 220, 100 S.Ct. 2109, 2118–19, 65 L.Ed.2d 66 (1980)). This is accomplished by proving with "'clear and cogent' evidence that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted ... in that State,' or has 'led to a grossly distorted result.'" *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 274, 98 S.Ct. 2340, 2345, 57 L.Ed.2d 197 (1978) (quoting *Hans Rees' Sons, Inc. v. North Carolina,*

283 U.S. 123, 135 (1931); *Norfolk & Ws. Ry. v. Missouri State Tax Comm'n,* 390 U.S. 317, 326, 88 S.Ct. 995, 1001–02, 19 L.Ed.2d 1201 (1968)).

 The key to this determination is whether Utah correctly allocated the motor sales to Utah for purposes of taxation, and we have already concluded that it did. *See Chicago Bridge & Iron Co. v. State Tax Comm'n,* 839 P.2d 303, 308–09 (Utah 1992). Because Utah is not taxing sales in another state, the subsequent out-of-state installation of goods sold in this state does not affect the local nature of the sales transactions. Utah does not violate the Commerce Clause by properly taxing transactions occurring solely within this state.

The purpose of UDITPA is to establish proper taxation among the various states. Multiple taxation is a result of improper taxation. Utah's taxation of Hercules was proper. Utah is not responsible for taxes that may have been improperly imposed by other jurisdictions. The fact that another state was the first to tax a transaction is irrelevant.

The court of appeals' decision is affirmed.

STEWART, A.C.J., HOWE and DURHAM, JJ., and GREENWOOD, Court of Appeals Judge, concur.

GREENWOOD, Court of Appeals Judge, sat to fill the vacancy on the court.

---

*Pabst Brewing Co.,* 387 N.W.2d at 122. Similarly, *Howmet Corp. v. Revenue Division* involved the out-of-state solicitation of sales to out-of-state purchasers. *Howmet Corp. v. Revenue Div.,* No. 87–11161–CM, 1993 WL 45075, at *1 (Mich.Ct. Cl. Jan. 2, 1993) (not reported). Lockheed is not an out-of-state purchaser coming in-state to make a purchase, nor does this case involve an out-of-state solicitation of sales.