KUSKIN, J.T.C.
The New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40, imposes a tax on the entire net income of every corporation doing business in New Jersey. N.J.S.A 54:10A-2 and -5(c). Under N.J.S.A. 54:10A-6, a corporation which does business in New Jersey, and maintains a regular place of business in another state or states, is obligated to pay tax only on that *273 portion of its entire net income which is allocable to this State. The formula for determining the allocation includes a “receipts fraction,” the numerator of which is the receipts of the corporation attributable to New Jersey and the denominator of which is the corporation’s total receipts.
Plaintiff is a manufacturing corporation having places of business in New Jersey and other states. Defendant determined that, in calculating its Corporation Business Tax liability, plaintiff should have included, in the numerator of its receipts fraction, all receipts generated by drop-shipment transactions. In a drop-shipment transaction, a manufacturer ships merchandise directly to the customer of a dealer which sold the merchandise to the customer. The dealer pays the manufacturer for the merchandise, and the customer pays the dealer. Plaintiff challenges defendant’s determination on the grounds that plaintiff properly excluded from the numerator of its receipts fraction those receipts generated by drop-shipment sales involving shipments of merchandise directly to out-of-state customers of the dealer which ordered the merchandise from plaintiff.
The matter was submitted for decision on the following stipulated facts. The years at issue are 1988 through 1992 (the “audit years”). During the audit years, plaintiff, a Michigan corporation, maintained a place of business in Allendale, New Jersey, at which it manufactured orthopedic hips and knees. The Allendale facility was the only facility operated by plaintiff for the manufacture of hips and knees. Plaintiffs principal place of business was in Kalamazoo, Michigan, and it operated manufacturing facilities for products other than hips and knees in Michigan and California. During the audit years, plaintiff shipped merchandise from Allen-dale to thirty-six states, but was qualified to do business only in New Jersey, California, Florida, Illinois, Michigan and Tennessee. Plaintiff filed Corporation Business Tax returns for the audit years in New Jersey, and filed income or franchise tax returns in the other states in which it was qualified to do business as well as in New York, Oregon, and Pennsylvania.
*274 Osteonics Corp. (“Osteonics”) is a New Jersey corporation. During the audit years, it wás a wholly-owned subsidiary of plaintiff and conducted business in New Jersey. Osteonics’ sole business was' the marketing and sale to purchasers within the United States of the orthopedic hips and knees manufactured by plaintiff in New Jersey. Osteonics and plaintiff occupied space in the same buildings in Allendale. The lease for the buildings was from an independent third party to Osteonics. Plaintiff occupied 167,949 square feet of the total of 175,866 square feet under lease, and Osteonics occupied the remaining 7,117 square feet. There was no written sublease from Osteonics to plaintiff. Plaintiff paid the costs for the Allendale facility, including rent and insurance, an allocable portion of which was reimbursed by Osteonics.
During the audit years, the orthopedic hips and knees manufactured by plaintiff at the Allendale facility were sold to Osteonics for resale by Osteonics to its customers in the United States. Plaintiff did not sell any hips and knees directly to customers in the United States. Customers placed orders for hips and knees with Osteonics either through an Osteonics sales representative or directly with Osteonics personnel located at Allendale. In either case, upon receipt of an order, Osteonics personnel at Allendale entered the order into Osteonics’ computer system, identifying the customer and its billing address, the shipping address, the product purchased, and the price at which the product was sold to the customer. After inputting and processing a customer order, Osteonics placed its order with plaintiff via an in-line computer. Osteonics did not have any employees engaged in shipping, receiving, warehouse, or distribution functions. Plaintiff performed these functions. Thus, upon receipt of the order from Osteonics, plaintiffs personnel rrauld locate the ordered product from inventory, pack it, and, pursuant to the delivery instructions entered on the computer system by Osteonics, ship the product to Osteonics’ customer either wuthin or outside of New Jersey. If a product was not available in inventory, the order from Osteonics would be sent to plaintiffs manufacturing department. After the product was manufactured, plaintiff would then package the product and ship directly to Osteonics’ customer pursuant to the computerized *275 shipping instructions. After shipment, either from inventory or after manufacture, plaintiff confirmed the shipment of each order to Osteonics for billing by Osteonics to its customer. Plaintiff shipped the products from its Allendale facility via common carrier, F.O.B. Allendale. The direct costs of shipping were generally passed on to Osteonics’ customers, although, occasionally, Osteonics would pay the shipping costs because of competitive pressures or the nature of its relationship with the customer.
Plaintiff did not provide a written bill or invoice to Osteonics for each product order. On at least a quarterly basis, personnel from plaintiff and Osteonics would review Osteonics’ receipts from sales in order to determine and implement price and profit allocations, with a final reconciliation of the allocations being made at the close of each year. The allocation of price and profit was based upon providing to plaintiff a price consisting of the following elements:
1) reimbursement of a share of direct expenses incurred by plaintiff in connection with the manufacture of its products at the Allendale facility, including manufacturing, warehousing, packaging and shipment costs, with Osteonics’ share being based on the percentage of plaintiffs total sales represented by sales to Osteonics;
2) reimbursement of a share of expenses related to the Allendale facility for rent and items such as insurance, utilities, and maintenance, with Osteonics’ share being based on the percentage of the total leased space occupied by Osteonics;
3) reimbursement of the cost of certain administrative services provided by plaintiff to Osteonics, such as payroll, with Osteonics’ share of such cost being based on the relative size of plaintiffs and Osteonics’ workforce at the Allendale facility; and
4) a profit margin for plaintiff.
The pricing by Osteonics to its customers included a gross profit margin to Osteonics of approximately twenty percent. Accordingly, in allocating Osteonics’ receipts from sales of products between Osteonics and plaintiff, the twenty percent gross profit to Osteonics was subtracted and the balance was allocated to plaintiff. This procedure was intended to return to plaintiff an adequate profit margin on sales, and reimburse plaintiff for the expenses paid by it in connection with the Allendale facility but attributable to Osteonics’ use of the facility.
For each of the audit years, plaintiff allocated to the destination state all sales to Osteonics which plaintiff shipped, at Osteonics’ *276 direction, to Osteonics’ customers outside of New Jersey. Accordingly, plaintiff excluded those sales from the numerator of its receipts fraction under N.J.S.A. 54:10A-6(B), and included the receipts in the numerator of its allocation factor in those states in which plaintiff filed tax returns. Plaintiff allocated to New Jersey only those sales to Osteonics where plaintiff shipped the merchandise to customers of Osteonics located in New Jersey. These shipments constituted one to six percent of plaintiffs total sales volume from its Allendale, New Jersey facility during the audit years. In 1992, for example, plaintiffs total receipts from Allen-dale sales were $107,598,328, and receipts from sales to Osteonics which plaintiff shipped to Osteonics’ customers in New Jersey were $877,640. Receipts for 1992 relating to shipments to states in which plaintiff filed tax returns (including New Jersey) wei’e $35,002,557, leaving $72,595,771 (approximately 67.55%) of receipts which were not subject to taxation in any state. For each of the other audit years, plaintiffs receipts from Allendale sales were lower than in 1992, but, for each of those years, approximately 61% to 62% of receipts were not subject to taxation in any state.
After auditing plaintiff for the audit years defendant determined that the numerator of plaintiffs receipts fraction should include all sales to Osteonics, regardless of the destination to which Osteonics (Erected plaintiff to ship the products. Based on that determination, defendant imposed an assessment of Corporation Business Tax in the amount of $1,326,204, with interest calculated through February 15, 1996 in the amount of $789,603.04. No portion of this amount, totalling $2,115,807.04, has been paid.
N.J.S.A. 54:10A-6, as in effect for the audit years (the statute was amended by L.1995, c. 245, § 1) provided that, with respect to a taxpayer “which maintains a regular place of business outside this State,” the portion of the taxpayer’s entire net income (as defined in N.J.S.A. 54:10A-4(k)) subject to taxation is determined by multiplying entire net income by “an allocation factor” (as defined in N.J.S.A. 54:10A-4(b)) equal to the average of three fractions, a property fraction, a payroll fraction and a receipts fraction. These fractions have, as then respective numerators, *277 the property, payroll, and sales receipts of the taxpayer in New Jersey and, as their respective denominators, the total property, payroll, and sales receipts of the taxpayer. The computation of the property and payroll fractions applicable to plaintiff are not in issue. Plaintiff challenges only the computation of the receipts fraction. N.J.S.A. 54:10A-6(B), as in effect during the audit years, defined the receipts fraction, in relevant part, as follows:
(1) [receipts from] sales of [the taxpayer’s] tangible personal property located within this State at the time of the receipt of or appropriation to the orders where shipments are made to points within this State,
(2) [receipts from] sales of tangible personal property located without the State at the time of the receipt of or appropriation to the orders where shipment is made to points within the State,
(6) all other business receipts .. earned within the State, divided by the total amount of the taxpayer’s receipts, similarly computed, arising during such period from all sales of its tangible personal property, services, rentals, royalties and all other business receipts, whether within or without the State.
Plaintiff and defendant agree that the products manufactured and shipped by plaintiff constituted tangible personal property under N.J.S.A 54:10A-6(B)(1). They also agree that, for purposes of application of this statute, New Jersey is a “destination state,” that is, in order to determine whether receipts from sales of merchandise shipped from New Jersey are includable in the numerator of the receipts fraction under subsection (B)(1), the location of the purchaser is the controlling factor. Finally, both parties agree that plaintiff and Osteonics should be treated, for purposes of the issues before the court, as wholly independent entities.
Plaintiff contends that shipments of orthopedic hips and knees made by it to Osteonics’ customers outside of New Jersey are not includable in plaintiff’s receipts fraction under N.J.S.A. 54:10A-6(B)(1) because, although the products were located in New Jersey “at the time of the receipt of or appropriation to the orders” from Osteonics, plaintiff made no “shipments” of the products to points within New Jersey. Plaintiff asserts that its physical proximity to Osteonics, and their inter-relationships in terms of allocation of *278 expenses and administrative functions, do not affect the “destination” of the merchandise.
Defendant contends that the sales transactions between plaintiff and Osteonics took place exclusively in New Jersey, and' that plaintiff constructively shipped to Osteonics the products ordered by Osteonics. Such constructive shipment occurred when plaintiff allocated specific merchandise to an Osteonics order, and then shipped the merchandise on behalf of Osteonics. Defendant asserts that the operational relationship between plaintiff and Osteonics at the Allendale facility, and the methodology for determining pricing between the two corporations, support the concept of constructive shipment to Osteonics. Defendant further contends that the general purpose of the Corporation Business Tax Act was to tax New Jersey transactions, that the subject sales by plaintiff to Osteonics were New Jersey transactions notwithstanding plaintiffs shipments to Osteonics’ customers in foreign states, and, therefore, that plaintiffs receipts from sales to Osteonics, even if not includible in the numerator of the receipts fraction under N.J.S.A. 54:10A-6(B)(1), are includible under .(B)(6) as “other business receipts ... earned within the State.”
Under N.J.S.A. 54:10A-2, the New Jersey Corporation Business Tax is imposed on evei’y domestic or foreign corporation, not otherwise exempted, “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” The tax has a broad scope.
The basis of the [Corporation Business Tax] is a broad one and is not ... imposed merely or solely for the privilege of doing business in New Jersey. It is a state tax applying generally to all domestic and foreign corporations, except those exempted by N.J.S.A. 54:10A-3 — primarily financial institutions and certain public utilities taxed specially by other acts. It was certainly intended to reach foreign corporations doing an intrastate business, an interstate business, or both, as far as could constitutionally be done, and its disjunctive recital of the various privileges must be considered with the intended overall coverage in mind____The privileges taxed, N.J.S.A. 54:10A-2, are stated, as we have indicated, in the alternative ... Thus the privilege taxed may ... be either that of exercising its corporate franchise within the state, or of owning or employing capital or property in the state, or maintaining an office in the state. The last two stated alternatives clearly point particularly to the nexus of localized activity within the state of a nature and extent, as here, *279 where it can realistically be said that state government substantially affords protection and gives benefits to the corporation’s enterprise within the state.
[Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967).]
Plaintiff and defendant acknowledge that neither N.J.S.A. 54:10A-6 nor the Regulations under that statute, N.J.A.C. 18:7-8.1 to -8.17, contemplated three-party drop-shipment transactions. The court’s responsibility, nevertheless, is to interpret the statutory provisions, and apply them to the facts at hand, in accordance with legislative intent.
The inquiry after all entails the search for legislative intent, not a search for legislators’ actual intent ... Legislative intent is extrapolated from relevant circumstances surrounding the passage of legislation, and that determination is rarely governed or settled by formal rules imposing a burden of proof. The judicial determination of legislative intent encompasses extrinsic evidence relating to the meaning of legislation, including legislative history, and ultimately is informed by our conventional and ordinary understanding of government operations and the normal presumptions Urn are invoked to make sense out of the past, particularly when every legislative event is not and cannot be and need not be chronicled.
[GE Solid State, lnc. v. Director, Div of Taxation, 132 N.J. 298, 320, 625 A.2d 468 (1993) (Handler, J., dissenting) (citation omitted).]
The New Jersey Supreme Court articulated the following general guideline for statutory interpretation in the context of a dispute under the Corporation Business Tax Act:
We acknowledge that in determining the meaning to be accorded the terms of a statute, “legislative purpose is the key to the interpretation of any statute.” The “examination of the overall policy and purpose of the statute provides additional assistance in its correct interpretation. The constniction that will best effectuate the statutes ultimate objectives is to be preferred.”
[Richard's Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 533, 659 A.2d 1360 (1995) (citations omitted).]
I
Applicability of N.J.S.A. 54:10A-6(B)(1)
In determining whether and how N.J.S.A. 54:10A-6(B)(1) is applicable to the drop-shipment arrangement between plaintiff and Osteonics, the court must take into account the broad scope of the Corporation Business Tax Act described above, but also must be guided by the express language of the Act. Subsection (B)(1) *280 requires inclusion in the numerator of the receipts fraction of receipts from sales of tangible personal property located in New Jersey at the time of the receipt of, or appropriation to, an order “where shipments are made to points within this State.” As set forth above, plaintiff asserts that its shipments to Osteonics’ out-of-state customers are excluded from the numerator of the receipts fraction under (B)(1), and, because (B)(1) is expressly applicable to shipments of tangible personal property from New Jersey, no other provision of the statute is applicable to such shipments. In support of these contentions, plaintiff relies primarily on administrative interpretations in California, New York, and Pennsylvania of statutes similar to N.J.S.A. 54:10A-6(B)(1).
California has adopted the Uniform Division of Income for Tax Purposes Act (UDITPA). 7A U.L.A. 356 (1999). This Act, with a wide variety of amendments, has been adopted in twenty-two states and the District of Columbia. The purpose of UDITPA was to establish a “uniform method of division of income among the several taxing jurisdictions” in order to assure “that a taxpayer is not taxed on more than its net income.” Prefatoi"y Note to UDITPA. Id. at 357. The Act is applicable to “[a]ny taxpayer having income from business activity which is taxable both within and without [a] state.” UDITPA § 2. Id. at 367. The income allocated to a state equals the average of a property factor, payroll factor, and sales factor. UDITPA § 9. Id. at 379. For purposes of the sales factor, sales of tangible personal property are allocated to a state if “the property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale.” UDITPA § 16(a). Id. at 393. A ruling by the California Franchise Tax Board, interpreting California’s version of § 16(a) of UDITPA, CaLRev. & Tax.Code § 25135(a) (Deering 1997), states that, under an administrative regulation, CalCode Regs. tit. 18 § 25135(a)(4) (1998), in a drop-shipment context, the phrase “a purchaser within this state” includes the purchaser’s customer. Consequently, a drop-shipment to a dealer’s out-of-state customer would be excluded from § 16(a).
*281 UDITPA has not been adopted by New York, but N.Y. Tax Law § 210(3)(2)(A) (McKinney 1998) requires a corporation to include in its receipts fraction “sales of its tangible personal property where shipments are made to points within this state.” In an advisory opinion of the New York Department of Taxation and Finance, the Deputy Director of the Department, without citing any legal authority other than a previous ruling of the same agency, determined, under this statute, that, when a taxpayer ships goods via a common carrier to designees of its customer, shipments out-of-state are not includable in the numerator of the receipts factor in New York. New York Department of Taxation and Finance, Advisory Opinion — Petition No. C930621B, TSB-A-93(18)C (October 18,1993).
Pennsylvania has not adopted UDTIPA, but requires inclusion in the numerator of a corporation’s sales (that is, receipts) fraction of “[s]ales of tangible personal property ... [where] the property is delivered or shipped to a purchaser within this State regardless of the f.o.b. point or other conditions of sale.” 72 P.S. § 7401(3)2(a)(16) (1999). This statute has been interpreted by administrative regulation to include “[t]he ultimate recipient of the property if the taxpayer, at the designation of the purchaser, delivers property in this Commonwealth to the ultimate recipient.” 61 Pa.Code § 153.26(a)(3)(ii) (1999).
Plaintiff also relies on the decision of the New Hampshire Supreme Court in New Jersey Machine of New Hampshire v. Department of Revenue, 117 N.H. 262, 372 A.2d 604 (1977). In that case, the seller of merchandise was located in New Jersey and the manufacturing company, a wholly-owned subsidiary of the seller, was located in New Hampshire. The New Jersey parent sold merchandise to a customer in New Hampshire, which the parent ordered from its New Hampshire manufacturing subsidiary. The subsidiary, pursuant to the parent corporation’s instructions, shipped the merchandise directly to the customer in New Hampshire. The New Hampshire Supreme Court, in interpreting statutory provisions similar to N.J.S.A. 54:10A-6(B)(1), held that the receipts from the sale were includable in the *282 numerator of the subsidiary corporation’s receipts fraction because of the shipment to New Hampshire. The court disregarded the sale transaction between the New Hampshire subsidiary and the New Jersey parent.
In response to plaintiffs reliance on the above California, New York, Pennsylvania and New Hampshire authorities, defendant relies on other out-of-state authorities dealing with “dock sales.” A dock sale involves the sale of merchandise to an out-of-state customer who takes delivery of the merchandise within the state in which the seller is located and then transports the merchandise to another- state. In this context, courts have generally interpreted statutory language, such as that contained in UDITPA § 16(a), defining a sale as being within a state if property is “delivered or shipped to a purchaser ... within this state,” so that the phrase “within this state” modifies “purchaser” and not “delivered or shipped.” Consequently, receipts from the sale of merchandise to an out-of-state customer delivered to the customer in-state would not be covered by the statute.. See, e.g., McDonnell Douglas Corp. v. Franchise Tax Bd., 26 Cal.App.4th 1789, 33 Cal.Rptr.2d 129 (1994); Lone Star Steel Co. v. Dolan, 668 P.2d 916 (Colo.1983); Texaco, Inc. v. Groppo, 215 Conn. 134, 574 A.2d 1293 (1990); Strickland v. Patcraft Mills, Inc., 251 Ga. 43, 302 S.E.2d 544 (1983); Department of Revenue v. Parker Banana Co., 391 So.2d 762 (Fla.Dist.Ct.App.1980). Defendant argues that these decisions demonstrate the controlling importance of the location of the purchaser in determining income allocation, and asserts that, because Osteonics is a New Jersey corporation, under the principle established by the dock sale cases, receipts earned by plaintiff from sales to Osteonics should be allocated to New Jersey.
I reject defendant’s reliance on the dock sale cases, and, there-' fore, reject defendant’s contentions as to the applicability of N.J.S.A. 54:10A-6(B)(1) to the sales transactions .between plaintiff and Osteonics, because the statute relates only to receipts from shipments of merchandise to points within New Jersey. Plaintiff made no such shipments with respect to sales by Osteonics to out-of-state customers.
*283 The term “shipment” means “the act or process of shipping.” Merriam-Webster’s Collegiate Dictionary 1081 (10th ed.1996). The definition of the verb “ship” includes “to cause to be transported.” Ibid. The word “shipment,” as used in the statute, therefore, implies physical movement of merchandise from one place to another and physical transfer of possession. This interpretation is consistent with N.J.A.C. 18:7-8.8, which states that “[d]elivery of goods to a purchaser in this State is a shipment made to a point in New Jersey regardless of the F.O.B. point or the fact that the goods may subsequently be resold and transshipped to a point outside this State.” The Regulation contains the following example: “Taxpayer, a manufacturer located outside of New Jersey, transports goods directly to a customer’s location in New Jersey. Since possession of the goods is transferred in New Jersey, shipment is deemed to be in this State resulting in receipts allocable to this state.” N.J.A.C. 18:7-8.8(a)(1)(i). The foregoing interpretation is also consistent with N.J.A.C. 18:7-8.8(a)(1)(ii) which, contrary to the dock sale cases cited by defendant, provides that receipts from a sale of tangible personal property “shipped to a non-New Jersey customer” are allocable to New Jersey “where possession is transferred in New Jersey.”
The active nature of the word “shipment” contrasts with the following definition of a “sale” in the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29:
Any transfer of title or possession or both, exchange or barter, rental, lease, or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under this act, for a consideration or any agreement therefor.
[N.J.S.A. 54:32B-2(f).]
For Sales Tax purposes, a mere transfer of title is sufficient to subject a transaction to tax. “Shipment” or a transfer of possession is not required.
Under N.J.S.A. 54:10A-6(B)(1), a “shipment” is made to a point in New Jersey only when actual transporting of merchandise and transfer of possession occurs. The concepts of constructive delivery and constructive shipment asserted by defendant are *284 inconsistent with the actual physical transfer which the word “shipment,” as used in this statute, implies. Under the stipulated facts, plaintiff made no physical transfer to Osteonics of any of the products which plaintiff sold to Osteonics and then shipped to Osteonics’ customers. Osteonics not only did not receive physical possession of the merchandise, but also lacked physical control over the merchandise. Plaintiff selected the particular hip or knee to be shipped to Osteonics’ customer, plaintiff packaged the product, and plaintiff arranged for transport to the customer via a common carrier chosen and hired by plaintiff. Consequently, plaintiff made no “shipment” of products to Osteonics as contemplated by N.J.S.A. 54:10A — 6(B)(1), and the only “shipment” within the meaning of the statute was from plaintiff to Osteonics’ customers. Under the authorities cited by plaintiff, statutes similar to subsection (B)(1) have been interpreted consistently to refer to the shipment to the ultimate customer. Based on the foregoing analysis, therefore, the sales from plaintiff to Osteonics are not includible in the numerator of plaintiffs receipts fraction under subsection (B)(1).
II
Applicability of N.J.S.A. 54:10A-6(B)(6)
I now must determine whether exclusion of the receipts from subsection (B)(1) prevents taxation by New Jersey of those receipts, or whether another provision of N.J.S.A 54:10A-6(B), particularly subsection (B)(6), is applicable to the receipts. The out-of-state authorities cited by plaintiff, which suggest that statutory provisions similar to N.J.S.A. 54:10A-6(B)(1) are exclusive as to the taxability of receipts from shipments of tangible personal property, are, in general, not binding on this court, nor are they conclusive as to the proper interpretation of N.J.S.A. 54:10A-6(B). United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 168, 72 A.2d 190 (1950); In re Summit and Elizabeth Trust Co., 111 N.J.Super. 154, 166, 268 A.2d 21 (App.Div.1970). Here, those authorities are of no relevance for the following specific reasons. The administrative advisory opinion in New York which, as noted *285 above, cited no authority, did not consider the impact or applicability of Sec. 210.8(a)(2)(b) of the New York Tax Law which, similar to N.J.S.A. 54:10A-6(B)(6), provided for inclusion in the receipts fraction numerator of “all other business receipts earned within the state.” Neither UDITPA nor the California and Pennsylvania statutes interpreted by regulations in those states contained provisions similar to N.J.S.A. 54:10A-6(B)(b),[1] nor did the statutory scheme interpreted by the New Hampshire Supreme Court. The significance of the absence of such provisions is suggested by a decision of the Texas Comptroller of Public Accounts, (cited by plaintiff with respect to the constitutional issue discussed below) which adopted the reasoning in New Jersey Machine of New Hampshire v. Department of Revenue, supra. In determining that receipts from the sale by a corporation doing business in Texas to the Texas customer of an out-of-state purchaser were allocable to Texas, the Comptroller stated: “To hold otherwise would leave a gap in the allocation of Petitioner’s sales receipts, since the goods are certainly not ‘delivered or shipped to a purchaser’, within the destination sale language used by most states.” Hearting No. 8,328, 1981 WL 12456, 6 (Tex.Cptr.Pub. Acct.)
N.J.S.A. 54:10A-6(B)(6) requires inclusion in the receipts fraction numerator of “all other business receipts ... earned in [New Jersey].” Plaintiff asserts that this provision is simply a “catchall” which is inapplicable to sales of tangible personal property specifically covered by subsection (B)(1), and that, in any event, subsection (B)(6) encompasses only receipts from intangible assets. Plaintiff cites the last sentence of N.J.A.C. 18:7-8.12(a) which states: “Examples of such business receipts [ (that is, those to which N.J.S.A. 54:1QA-6(B)(6) refers) ] include, but are not limited to, interest income, dividends, governmental subsidies or proceeds from sales of scrap.” Defendant also describes subsection (B)(6) as a “catch-all,” but asserts that, among the receipts it *286 was intended to “catch,” are those generated by sales of tangible personal property entirely within New Jersey, such as the sales by plaintiff to Osteonics.
The proper scope of N.J.S.A. 54:10A-6(B)(6) must be determined in light of the broad scope and structure of the Corporation Business Tax Act. As set forth above, the basis for the imposition of the tax is the entire net income of the corporate taxpayer. Section 6(B)(1) of the Act defines the extent to which receipts from the sale of merchandise shipped from New Jersey are to be included for purposes of determining the portion of a multi-state corporation’s entire net income allocable to New Jersey. As acknowledged by the parties, this subsection did not contemplate three-party drop-shipment transactions, and, in any event, the subsection does not prohibit inclusion in the receipts fraction of receipts generated by transactions relating solely to New Jersey and not covered by subsection (B)(1) or any other subsection of Section 6(B). Subsection (B)(6) addresses such transactions. The portion of N.J.A.C. 18:7-8.12, which precedes the sentence cited by plaintiff and quoted above, defines the scope of the subsection as follows:
All other business receipts earned by the taxpayer within New Jersey are allocable to New Jersey. Other business receipts include all items of income entering into the determination of entire net income during the year for which the business allocation factor is being computed and is not otherwise provided for in these rules.
Under subsection (B)(6), the place to or from which shipment is made is not relevant to a determination of whether receipts must be included in the numerator of the receipts fraction. The issue is solely whether the receipt was “earned by the taxpayer within New Jersey.” In order to resolve this issue as to plaintiffs receipts from Osteonics, the nature of a drop-shipment transaction must be considered. “A drop-shipment transaction is a three-party transaction which masks the fact that there are actually two transactions, the sale from [the manufacturer] to the ... dealer and the sale from the ... dealer to the dealer’s customer----” Steelcase Inc. v. Director, Div. of Taxation, 13 N.J.Tax 182, 193 (Tax 1993). Plaintiff and defendant, in effect, have accepted the Steelcase description of a drop-shipment by *287 stipulating that plaintiffs sales of orthopedic hips and knees to Osteonics were sales for resale by Osteonics to customers in the United States.
Consistent with the Steelcase analysis and the parties’ stipulation, I conclude that N.J.S.A. 54:10A-6(B)(6) is applicable to plaintiffs receipts from sales to Osteonics involving direct shipments by plaintiff to Osteonics’ out-of-state customers. Plaintiff was located in New Jersey, and sold merchandise located in New Jersey to a customer also located in New Jersey, Osteonics. Osteonics made payment for the merchandise in New Jersey. The transactions generating plaintiffs receipts were New Jersey transactions, and the receipts were earned in New Jersey. This result is not dependent upon, and is not affected by, the physical proximity of plaintiff and Osteonics or by the particular arrangements between plaintiff and Osteonics for determining the price paid by Osteonics to plaintiff.
Plaintiff could have established Osteonics as a division and not as a separate subsidiary corporation, in which event, as acknowledged by defendant, receipts from sales made by plaintiff (through its Osteonics division) and shipped to out-of-state customers would not be includable in the numerator of plaintiffs receipts fraction under N.J.S.A. 54:10A-6(B)(1) or any other subsection of this statute. Plaintiff elected the existing corporate structure, and may not avoid the tax consequences of that structure. Our Supreme Court has stated as follows with respect to tax consequences flowing from a parent-subsidiary relationship:
We are not told why [the taxpayer] employed subsidiaries. A probable motivation was tax advantage somewhere. The question is whether a state must adjust its tax laws to avoid a disadvantage a taxpayer may experience because of its decision to incorporate a part of its operation. As a general proposition, the answer must be that it is for the taxpayer to make its business decisions in the light of tax statutes, rather than the other way around.
[Household Finance Corp. v. Director, Div. of Taxation, 36 N.J. 353, 362, 177 A.2d 738 (1962) (citations omitted).]
In Hercules Inc. v. Utah State Tax Comm’n., Auditing Division, 877 P.2d 133 (Utah) cert. denied, 513 U.S. 1043, 115 S.Ct. 636, 130 L.Ed.2d 543 (1994), the Utah Supreme Court upheld *288 taxation by Utah of an intrastate sale where the only shipment of the merchandise was to a foreign state. In that case, Hercules, acting as a subcontractor for Lockheed, manufactured rocket motors in Utah. Lockheed inspected and accepted the motors in Utah where title passed to Lockheed, and then from Lockheed to the United States Government. The rocket motors were then shipped, via common carrier, from Utah to military assembly facilities in either Washington or California, where the motors were assembled by Lockheed into actual missiles. The Utah Tax Commission treated Hercules’ receipts from the sale to Lockheed as includable in the receipts fraction used for allocating to Utah income of a multi-state corporation. Hercules argued that the “destination rule” applies under the Utah statute, a version of the UDITPA § 16(a). The Utah Supreme Court rejected that argument, stating that the destination rule “applies only to interstate sales.” Id. at 186. The court also rejected the related argument that Utah’s imposition of a tax was double taxation of Hercules in violation of the Commerce Clause of the United States Constitution.
Because Utah is not taxing sales in another state, the subsequent out-of-state installation of goods sold in this state does not affect the local nature of the sales transactions. Utah does not violate the Commerce Clause by properly taxing transactions occurring solely within this state.
The purpose of UDITPA is to establish proper taxation among the various states. Multiple taxation is a result of improper taxation. Utah’s taxation of Hercules was proper. Utah is not responsible for taxes that may have been improperly imposed by other jurisdictions. The fact that another state was the first to tax a transaction is irrelevant.
[Id. at 137.]
Here, if, for taxation purposes in a state other than New Jersey, plaintiff reported receipts based upon the destination to which merchandise purchased by Osteonics was shipped, plaintiff paid taxes to that foreign state on receipts earned in New Jersey. Whether or not plaintiff paid taxes to another state based on receipts from Osteonics, New Jersey retained the right to tax receipts from the intrastate transactions between plaintiff and Osteonics.
*289 III
Commerce Clause
Plaintiff contends that New Jersey’s inclusion of the receipts from its sales to Osteonics of merchandise which plaintiff ships directly to Osteonics’ out-of-state customers would violate the Commerce Clause of the United States Constitution, U.S. Const., art. I, § 8. The United States Supreme Court has ruled that a state may tax that portion of the income of a multi-state corporation which is properly allocable to the state, and the Court has established criteria for determining the constitutionality of a state’s income allocation formula.
The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency — tint is the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business’s income being taxed. The second and more difficult requirement is what might be called external consistency — the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated. The Constitution does not “invalidatej an apportionment formula whenever it may result in taxation of some income that did not have its source in the taxing-state. .Nevertheless, we will strike down the application of an apportionment formula if the taxpayer can prove “by ‘clear and cogent evidence’ that the income attributed to the State is in fact ‘out of all appropriate proportion to the business transacted in that state.’ ”
[Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545, 556 (1983) (citations omitted).]
Plaintiff asserts that its receipts from shipments to destinations outside New Jersey are taxed in some of the destination states, thereby resulting in multiple taxation in violation of the internal consistency test if New Jersey taxes the same receipts. Plaintiff does not contend that including such receipts in the numerator of the receipts fraction would violate the external consistency test.
 Plaintiff’s contention may be answered on two bases. First, Container Corp. of America and other United States Supreme Court decisions, e.g., Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), Moorman Mfg. Co. v. G.D. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), Oklahoma Tax Comm’n v. Jefferson Lines Inc., 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995), do not limit the right *290 and authority of New Jersey to include, for tax purposes, receipts from a transaction which is wholly local in nature, even if some duplicate taxation were to result. In Moorman Mfg. Co. v. G.D. Bair, supra, the Supreme Court held that the Commerce Clause permits some “overlap” in the computation by different states of a multi-state corporation’s taxable income and noted that “some risk of duplicative taxation exists whenever the States in which a corporation does business do not follow identical rules for the division of income.” Id. at 278, 98 S.Ct. at 2347, 57 L.Ed.2d at 207-08. In the context of discussing allocation of income resulting from the sale of services, the Supreme Court, in Oklahoma Tax Comm’n v. Jefferson Lines, Inc., supra, stated that “[interstate activity may be essential to a substantial portion of the value of the services ... [or] essential to performance of the services ..., but sales with at least partial performance in the taxing State justify that State’s taxation of the transaction’s entire gross receipts in the hands of the seller.” Id. at 189, 115 S.Ct. at 1340, 131 L.Ed.2d at 274. These principles are applicable to the transactions between plaintiff and Osteonies. Because plaintiff performed and provided, in New Jersey, all consideration for its sales to Osteonies, the receipts from those sales are taxable in New Jersey even though plaintiff shipped merchandise directly to Osteonies’ out-of-state customers and may have elected to pay taxes in other states based on receipts from Osteonies relating to such shipments.
The second answer to plaintiffs contention is that the internal consistency test does not relate to .actual results under, existing varying interpretations of taxing statutes. The test is whether the taxing posture “if applied by every jurisdiction” would result in multiple taxation. If every state regarded destination as irrelevant to the taxability of receipts earned in intrastate sales by a manufacturer to a dealer in drop-shipment transactions, no multiple taxation would result because the receipts from sales by the manufacturer to the dealer (here plaintiff to Osteonies) would be taxed only in the state in which the sales took place.
*291 Based on the preceding analysis and discussion, judgment will be entered in favor of defendant for the sum of: $1,826,204 of Corporation Business Tax due for the audit years, plus interest in the sum of $789,608.04 calculated to February 15, 1996, plus interest pursuant to N.J.S.A. 54:10A-19.1 and N.J.S.A. 54:49-3 on $1,326,204 from and including February 16, 1996 to the date of payment by plaintiff to defendant.

 Defendant has not promulgated a regulation in New Jersey similar to the California and Pennsylvania regulations