755 A.2d 1200

STRYKER CORPORATION, PLAINTIFF–APPELLANT,
v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 17, 2000—Decided July 21, 2000.

Before Judges BAIME, BROCHIN and EICHEN.

*Michael A. Guariglia,* argued the cause for appellant (*McCarter & English,* attorneys; *Margaret C. Wilson* and *Charles M. Costenbader,* on the brief).

*Gail L. Menyuk,* Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General, attorney; *Nancy Kaplen,* Assistant Attorney General, of counsel; *Ms. Menyuk,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D. (retired and temporarily assigned on recall).

Plaintiff Stryker Corporation, a Michigan corporation, has appealed from a judgment entered against it by the Tax Court (Honorable Harold A. Kuskin, J.T.C.), *Stryker Corp. v. Director, Division of Taxation,* 18 *N.J. Tax* 270 (Tax 1999), for unpaid Corporation Business Tax in the amount of $1,326,204, with interest of $789,603.04 through February 15, 1996, for the years 1988 through 1992. The facts of the case, which have been stipulated by the parties, are fully described in Judge Kuskin's written opinion issued August 16, 1999. A brief summary will be sufficient for our purpose.

Stryker has manufacturing facilities in New Jersey and in other states. Its New Jersey facility, where the activities take place that are the subject of this appeal, is in Allendale, New Jersey. That facility is the only site at which Stryker manufactures hip and knee replacements. Stryker sells these products to customers located in the United States through its wholly owned subsidiary, Osteonics Corporation, which operates out of the same Allendale facility as Stryker. Osteonics' computers transmit customers' orders to Stryker's computers. Stryker packs and ships the products directly to Osteonics' customers without any intervention by Osteonics beyond submission of the orders. Osteonics never takes possession of the products. Osteonics bills its customers, retains a portion of the receipts, and remits the balance to Stryker. The payments from Osteonics to Stryker include a profit to Stryker.

The operations of the two companies are very closely integrated. Both Stryker and the Director agree, however, that they should be treated as separate entities for purposes of the Corporation Business Tax.

New Jersey imposes a tax on "[e]very domestic or foreign corporation which is not hereinafter exempted ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." *N.J.S.A.* 54:10A–2. The intent of the statute is to tax a corporation which, like Stryker, "maintains a regular place of business outside this State other than a statutory office" only upon that portion of its entire net income, from wherever derived,[1] which is roughly proportional to the contribution that tangible assets and employees located in New Jersey and receipts earned here have made to the corporation's entire net income. *N.J.S.A.* 54:10A–6. To that end, the statute prescribes an allocation formula. *N.J.S.A.* 54:10A–6. The portion of the corporation's entire net income which is allocated to New Jersey is "determined by multiplying such ... entire net income ... by ... the average of" three defined fractions, the property fraction, the receipts fraction and the payroll fraction. *N.J.S.A.* 54:10A–6.[2] The denominators of these fractions represent all of the property, receipts and payroll of the corporation, wherever situated and from wherever derived. *N.J.S.A.* 54:10A–6. The numerators are intended to reflect New Jersey's contributions. *N.J.S.A.* 54:10A–6. Therefore the larger the numerators of these fractions, the larger the percentage of the

---

[1] "Entire net income" is defined to mean "total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets." *N.J.S.A.* 54:10A–4(k).

[2] The language of this statute was amended by *L.* 1995, *c.* 245, § 1 with an effective date of September 11, 1995; however, in this case, the tax was applied to the years 1988 to 1992, requiring the previous statute to apply here.

taxpayer's income which will be allocated to New Jersey and subject to the New Jersey tax. The disputed issue in the present case is, what receipts of Stryker are New Jersey income and should therefore be included in the numerator of the receipts fraction.

*N.J.S.A.* 54:10A–6(B) describes as follows the kinds of income to be included in the numerator of the receipts fraction:

[R]eceipts of the taxpayer ... arising ... from

(1) sales of its tangible personal property located within this State at the time of the receipt of or appropriation to the orders where shipments are made to points within this State,

(2) sales of tangible personal property located without the State at the time of the receipt of or appropriation to the orders where shipment is made to points within the State,

(3) (Deleted by amendment.)

(4) services performed within the State,

(5) rentals from property situated, and royalties from the use of patents or copyrights, within the State,

(6) all other business receipts ... earned within the State....

The denominator of the receipts fraction is "the total amount of the taxpayer's receipts, similarly computed, arising during such period from all sales of its tangible personal property, services, rentals, royalties and all other business receipts, whether within or without the State." *N.J.S.A.* 54:10A–6(B)(6).

The Director contended to the Tax Court, and argues to us, that Stryker's net income from its sales to Osteonics constitutes net income allocable to New Jersey by virtue of subparagraph (B)(1) or, alternatively, subparagraph (B)(6). Judge Kuskin held that Stryker's sales do not fall within *N.J.S.A.* 54:10A–6(B)(1) (emphasis added) because they do not involve physical "*shipments* ... made to points within this State." But he held that the income which Stryker derived from its sales to Osteonics does fall within *N.J.S.A.* 54:10A–6(B)(6), "all other business receipts ... earned within the State ...," because it represents Stryker's earnings from its activities conducted exclusively within New Jersey.

Stryker argues on appeal that the criterion for allocation of sales receipts to New Jersey is the customer's location and,

therefore, that its sales to Osteonics for orders which were drop-shipped to customers outside of New Jersey do not generate New Jersey receipts as defined by *N.J.S.A.* 54:10A–6(B)(1). Stryker also contends that construing *N.J.S.A.* 54:10A–6(B)(6) to include these receipts in its catch-all language is contrary to New Jersey's destination rule and contrary to what it refers to as "the only on-point authority from other states." In addition, Stryker asserts that "the Tax Court's interpretation of *N.J.S.A.* 54:10A–6(B) creates internal inconsistency and violates the Commerce Clause."

We affirm substantially for the reasons stated in Judge Kuskin's opinion. However, Stryker's brief to our court requires us to expand on those reasons in response to Stryker's argument challenging Judge Kuskin's holding that its receipts from sales to Osteonics of products drop-shipped to Osteonics' customers outside New Jersey are New Jersey income in accordance with *N.J.S.A.* 54:10A–6(B)(6). *See Stryker Corp., supra,* 18 *N.J. Tax* at 287.

Stryker points out that *N.J.S.A.* 54:10A–6(B)(6) (emphasis added) refers to "*other* business receipts," *i.e.,* other than those types of receipts enumerated in subparagraphs (B)(1) through (B)(6). Subparagraph (B)(1) refers to sales by a seller in New Jersey to a buyer in New Jersey, and subparagraph (B)(2) refers to sales by a seller outside of New Jersey to a buyer in New Jersey. *N.J.S.A.* 54:10A–6. Stryker argues that its receipts from its drop-shipment sales cannot be "other business receipts" because, like the categories of receipts referred to in subparagraphs (B)(1) and (B)(2), they are receipts from sales of tangible personalty, not "other" receipts.

This contention, however, is only a variation on the constant theme that runs throughout Stryker's argument. This single theme is that the Director should treat as one transaction what Stryker has chosen to treat as two-a sale of its product to Osteonics and a sale by Osteonics to its customers. *N.J.S.A.* 54:10A–6(B)(1) and (2) both deal with receipts from sales in those categories of transactions where the seller consummates the sale

by shipping the products to the buyer. In those cases, the statute has made the destination of the seller's shipment determinative. Income generated by Stryker's shipments to out-of-state customers that purchased the products directly from Stryker would not be included in the numerator of the receipts fraction of the allocation formula. But the disputed receipts are "other business receipts" within the meaning of *N.J.S.A.* 54:10A–6(B)(6) because they are receipts from a category of transactions which the statute differentiates from those enumerated in subparagraphs (B)(1) and (B)(2), *i.e.,* they are receipts from sales of products which the seller ships to someone other than its direct customers.

At the present time, *N.J.S.A.* 54:10A–6(B) lists subparagraphs one, two, four, five and six. In place of subparagraph three, there is a notation which reads "(Deleted by amendment.)" The deleted subparagraph read as follows:

(3) sales of any such property not located at the time of the receipt of or appropriation to the orders at any permanent or continuous place of business maintained by the taxpayer without the State, where the orders were received or accepted within the State. For the purposes of this subsection (3), an order shall be deemed received or accepted within the State if it has been received or accepted by an employee, agent, agency or independent contractor chiefly situated at, connected with, by contract or otherwise, or sent out from a permanent or continuous place of business of the taxpayer within the State[.]

This provision, which was enacted in 1945, *L.* 1945, *c.* 162, was deleted in 1967. *L.* 1967, *c.* 51. Stryker points out that if this provision were still in effect, its receipts from its sales to Osteonics of products drop-shipped to Osteonics' customers would have been included in the numerator of the receipts fraction of the allocation formula. Therefore, Stryker argues, the amendment of the statute deleting this provision implies a legislative intent to exclude its disputed receipts from Osteonics from the numerator of the receipts fraction.

Under this statutory provision, any income earned by the taxpayer from any products which it shipped out of State to its direct customers would have been treated as New Jersey income for the purpose of the receipts fraction of the allocation formula if, when the order was accepted, those products were not located at

an out-of-state facility of the taxpayer. The net cast by this provision was far too broad. It produced a result directly contrary to what was the design of the Business Corporation Tax, to favor "exports" and thus to encourage the location of manufacturing facilities in New Jersey by using the destination of direct sales as the criterion for whether income generated by those sales would be included in, or excluded from, New Jersey income for the purpose of calculating the numerator of the receipts fraction of the allocation formula. By the terms of this provision, even if Stryker sold and shipped its products directly to out-of-state customers, its revenue from those sales would have been treated as New Jersey income because all of the hip and knee replacements which it sells are either in inventory in its New Jersey facility when the order is received or are specially manufactured for the customer. Consequently, although it is true, as Stryker maintains, that the receipts from the sales at issue here would have been treated as New Jersey sales under the deleted provision of *N.J.S.A.* 54:10A–6(B)(3), the reason for the deletion is the breadth of its reach. We cannot logically infer from its repeal that the Legislature intended to treat the disputed income at issue here-receipts from drop-shipments sent out of state-as non-New Jersey income.

The argument for treating these receipts as New Jersey receipts for the purpose of calculating the numerator of the receipts fraction of the allocation formula is far more convincing. Stryker chose its mode of operation and, insofar as New Jersey is concerned, it is free to alter it. But under its operating pattern during the tax years which are the subject of this appeal, Stryker realized net income from the sale of products manufactured and located in New Jersey to Osteonics, a separate corporation also located in New Jersey. Indeed, at least part of that income represented rent for Osteonics' use of the Allendale, New Jersey facility which Stryker paid for and for other services which Stryker provided to Osteonics in New Jersey, including the services required to ship the products to Osteonics' customers. That income could not reasonably be treated as income generated anywhere except in New Jersey.

All of Stryker's other arguments have been more than adequately refuted in the opinion of the Tax Court, *Stryker Corp.,* *supra,* 18 *N.J. Tax* 270. The judgment appealed from is therefore affirmed.